**FIREMAN'S FUND INSURANCE COM-
PANY et al., Petitioners,**

v.

**SAND LAKE LOUNGE, INC. d/b/a Telon's
Sandbox, a/k/a Telon's, Respondent.**

No. 1780.

Supreme Court of Alaska.

Sept. 24, 1973.

Robert L. Eastaugh, of Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, for petitioners.

Robert B. Perry, of Wanamaker, Dickson & Perry, Anchorage, for respondent.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

CONNOR, Justice.

In this case we are asked to interpret a provision in a fire insurance policy con-

cerning the time within which the insured must, in the event of a dispute between the insured and the carrier, bring suit against the carrier.

By a petition for review we are asked to determine whether the superior court correctly entered an order denying petitioners' motion for summary judgment. We have determined to grant review because a controlling question of law is presented about which there is substantial ground for difference of opinion, and a present review of the order may materially advance the ultimate termination of the litigation. Appellate Rule 23(d).

There is no dispute as to the facts. Telon's Sandbox, a cocktail lounge and liquor store in the vicinity of Anchorage, Alaska, was damaged by fire on July 6, 1970. The contents of the premises were insured against fire loss by the four petitioners herein. On September 11, 1970, Sand Lake Lounge, Inc., the owner of Telon's Sandbox, filed with petitioners' agent, General Adjustment Bureau, Inc., a proof of loss dated September 4, 1970. Filing of a proof of loss is required by the policies as a condition precedent to payment by petitioners. In a letter dated September 22, 1970, General Adjustment Bureau, Inc., informed respondent that the proof was incomplete. Respondent was given an additional 15 days from September 22, 1970, to file an additional proof of loss and did in fact file a detailed proof of loss within that time limit. On October 20, 1970, petitioners deposed the president of Sand Lake Lounge, Inc. On December 4, 1970, nearly five months after the fire, respondent was informed by letter that petitioners had elected to deny insurance coverage.

Respondent filed suit in superior court on July 29, 1971, against petitioners. The cause of action was based on non-payment of the loss claim.

Each of the insurance policies contains the following language:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy have been complied with, and unless commenced within twelve months next after the inception of the loss."

On June 8, 1972, petitioners moved for summary judgment. One of the two questions raised is now presented in this petition: whether the respondent's complaint, filed 12 months and 23 days after the date of the fire, was barred by the contractual limitation for suit as set forth in the policies. The superior court denied the motion, holding that the one-year contract limitation period commences to run after the 60-day period for submission by the insured of proof of loss, and does not run from the date of the fire loss itself.

In this petition, the insurance companies argue that the phrase "inception of the loss" must be construed to mean date of fire, in this instance July 6, 1970. Respondent counters that the phrase "inception of the loss" should be considered in the context of the policy as a whole, and interprets it to mean the date on which liability was denied by insurer, i.e., the date on which the cause of action accrued.

The only Alaska case, Austin v. Fulton Insurance Co., 444 P.2d 536 (Alaska 1968), dealing with such a clause did not actually interpret it. The discussion in that case focused upon legal problems of estoppel, reformation of contract, and negligence. Although we held that the failure to sue within twelve months of the loss barred claims based upon the policy, we did not pass upon the precise question now before us. No claim was made in *Austin* that the inception of loss should be calculated as respondents urge in this case. Accordingly, we regard the question before us as one of first impression.

There is, to be sure, considerable case law from other jurisdictions interpreting the phrase in issue here. Many of the older cases interpret "inception of the loss" as referring to the date the cause of action accrued, not the date of destruction, on the thesis that inasmuch as the insurance company has written the contract, the clause

should be interpreted most favorably to the insured. The reasoning advanced to support this interpretation is that the parties could not be presumed to have suspended the remedy of suit and to have provided for the running of the period of limitation at the same time: the intention of the parties must have been that insured should have the full length of time in which to bring suit. Phoenix Ins. Co. of Hartford v. Fidelity & Deposit Co. of Maryland, 162 Tenn. 427, 37 S.W.2d 119 (1931). Many of these cases interpret policies with rather short periods of limitation, such as six months. The implication is that such a short period is unreasonable, especially if most of the time is consumed in negotiations with the insurance company as also provided in the insurance policy. Some of the cases deal with policies that specifically limit the insured's right to sue until after the lapse of a sixty or ninety day negotiation period. Therefore, courts have held that the period of limitation to sue would not begin to run until after the sixty or ninety day period had expired. *E.g.*, Heilig v. Aetna Life Ins. Co., 152 N.C. 358, 67 S. E. 927 (1910).

We note that the cases advancing this interpretation were decided before the enactment of statutes prescribing required wording for insurance policies.[1] Most of the newer cases, by contrast, deal with policy forms that have been approved by legislatures. This statutory adoption of the form of insurance policies is a major distinguishing mark in many, though not all, of the recent cases.

The current interpretative trend began in New York, when the legislature adopted a standard fire insurance policy which provided that action on the policy had to be commenced "within twelve months next *after the fire*". Subsequently, insurance was expanded to include other types of losses, such as theft, lightning, windstorm, and eventually earthquake, and the loss clause in the policies was changed to read "inception of the loss". The New York Legislature in 1943 enacted a standard policy which reflected the change in wording: it replaced "after the fire" with "after inception of the loss".

At the present time, most states have enacted statutes similar to that enacted by the New York Legislature in 1943 and have patterned their standard fire insurance policies after the 1943 New York standard form. The more recent cases interpreting the phrase at issue here seem to attach much weight to the circumstance that the provisions of the standard policy are prescribed by statute.[2] Many cases hold the "inception of the loss" to be the date of destruction on the ground that the language is not dictated by the insurance company but is the specific language expressed by the legislature.[3]

 Although there is some question as to whether Alaska has enacted a statute adopting the standard form for fire

---

1. Steel v. The Phoenix Insurance Company of Brooklyn, 154 U.S. 518, 14 S.Ct. 1153, 38 L.Ed. 1064 (divided court affirming judgment below) (1894); Case v. Sun Ins. Co., 83 Cal. 473, 23 P. 534 (1890); Read v. State Ins. Co., 103 Iowa 307, 72 N.W. 665 (1897); Matt v. Iowa Mutual Aid Assoc., 81 Iowa 135, 46 N.W. 857 (1890); Fireman's Fund Ins. Co. v. Buckstaff, 38 Neb. 150, 56 N.W. 697 (1893).

2. *See*, American Bar Association, Section of Insurance, Negligence and Compensation Law, Current Annotations of the 1943 New York Standard Fire Insurance Policy, Section 22· at 213–29 (1966) for a complete summary of recent cases.

3. Bollinger v. National Fire Ins. Co., 147 P.2d 611 (Cal.1944), on reh., 25 Cal.2d 399, 154 P.2d 399 (1944); Olson Enterprises, Inc. v. Citizens Ins. Co., 255 Iowa 141, 121 N.W.2d 510 (1963); Longe's Estate v. Assurance Co. of America, 107 N.Y.S.2d 961 (Sup.Ct. Schenectady County 1951); Margulies v. Quaker City Fire & Marine Ins. Co., 276 App.Div. 695, 97 N.Y.S.2d 100 (1950); Boyd v. Bankers & Shippers Ins. Co., 245 N.C. 503, 96 S.E.2d 703 (1957); Bell v. Quaker City Fire & Marine Ins. Co., 230 Or. 615, 370 P.2d 219 (1962); Ramsey v. Home Ins. Co., 203 Va. 502, 125 S.E.2d 201 (1962); Townsend v. Milwaukee Ins. Co., 15 Wis.2d 464, 113 N.W.2d 126 (1962).

insurance,[4] we are of the opinion that the presence or absence of such a statute is irrelevant to the determination of this petition. At the outset, we take little nourishment from the rationale that statutes prescribing a standard policy constitute an expression of specific language by the legislature. Even conceding arguendo that legislatures rather than insurance companies have dictated the specific language of standard forms, nevertheless we do not think that any particular interpretation of the phrase "inception of the loss" is mandated by this reason.

■ More fruitful than determining whether the legislature adopted a particular clause is resort to the fundamental tenets of contract law. The thrust of the policy provision which includes the phrase "inception of the loss" is to establish a contractually agreed upon limitation provision significantly shorter than the applicable statute of limitations. In Alaska, under AS 09.10.050 the statutory period in which suit may be brought on a contract is six years. As a general rule, promises either to not plead the statute of limitations as a defense or to waive its benefit have been held to be contrary to public policy if made at the time of the contract sought to be enforced.[5] On the other hand, as Professor Corbin instructs us:

"Although the parties can not at the time of contracting effectively bargain not to plead the statute or that the time for suit shall be longer than that allowed by statute, it is not against the public interest that they shall then agree upon a shorter time limit than that fixed by statute if the time agreed upon is not so short as to be unreasonable in the light of the provisions of the contract and the circumstances of its performance and enforcement. Such time limits in insurance policies have often been held valid. These agreements are not at all inconsistent with the purposes underlying the statute of limitations. Those purposes are to prevent the bringing and enforcement of stale claims, involving extra danger of fraud and mistake, unless the debtor has expressed a voluntary assent within the statutory period. An express provision fixing a shorter limit merely hastens the enforcement; and it is not made invalid by being included from the beginning in the contract to be enforced. *If held invalid, it must be on the ground that the terms are unconscionable and that unfair advantage has been taken of a claimant whose bargaining position was inferior.*" (Footnotes omitted, emphasis added.) [6]

■ The question with which we must wrestle, then, is whether interpreting the phrase "inception of the loss" to mean the date of the fire would give the petitioners unfair advantage over claimant whose bar-

---

4. Although there is no current specific provision in the Alaska insurance statute adopting the 1943 New York standard fire insurance policy form, the legislature did adopt such a form in 1949, in 1959, (§ 3 Ch. 182 SLA 1959) and again in 1963 as then AS 21.25.030. In the new Alaska Insurance Code enacted in 1966, the legislature omitted the specific provisions for the fire insurance policy (AS 21.25.030). The omission may have been an oversight. There is no legislative history explaining why the omission occurred. The House Report speaks only in general terms: the purpose of the complete revision of Title 21 was to respond to the great expansion of business in Alaska and the need to regulate and protect the insurance companies and those buying insurance. *See*, House Journal, 4th Legislature, 2nd Session 1966, HB 313 Report located after p. 430 (S. 12, especially pages 1, 6, 7).

Since, however, the legislature did provide for the continuing use of forms then in existence, it can be argued that the legislature provided by reference for adoption of the 1943 New York form. AS 21.03.040 states that any form of an insurance document lawfully in use at the time of enactment may continue in use until the director [of insurance] prescribes otherwise by regulations. The forms then in use were the 1943 New York standard fire insurance policy forms. On the other hand, the legislature did provide for life insurance, group life insurance, disability insurance, group and blanket disability insurance, credit and life disability insurance, and title insurance, yet it did not enact provisions for fire insurance forms.

5. 1A Corbin, Contracts § 218 at 306 (1963).

6. *Id.* at 311–312.

gaining position was inferior. In our opinion, manifestly it would. Respondent subscribed to a form policy. We take judicial notice that the terms of such policies are not arrived at by bargaining between the parties. To the contrary, the industry practice of using a form policy reduces the consumer's choice to a take-it-or-leave-it option. Unquestionably respondent was in an inferior bargaining position.[7]

In determining the boundary of what constitutes a fair limitation provision, we think the Uniform Commercial Code provides a useful statutory analogy. Article 2, § 2-725(1), AS 45.05.242(a), provides:

> "An action for breach of a contract for sale must be commenced within four years after the *cause of action* has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." (Emphasis added.)

Under the code, then, the minimum period of limitation to which the parties may agree is one year from the accrual of the cause of action. We agree with Professor Corbin that the soundness of this provision concerning contracts for the sale of goods applies equally to other contracts.[8]

■ In the instant case, the cause of action did not accrue until December 4, 1970, the date on which petitioners notified respondent of their decision to deny coverage.[9] By analogy with the Uniform Commercial Code, the minimum period of limitation to which the parties could agree would be one year from this date. We therefore hold that "inception of the loss" means the date on which the insurance company denies coverage, that is, the date on which the cause of action accrues.

Our holding in this case is supported by an important practical consideration. In insurance loss cases, adequate preparation of a proof of loss requires a substantial amount of time. Even after submitting his proof, a claimant typically must wait for 60 days before filing suit. The standard policy provision affords insurance companies that 60-day period within which to accept the proof of loss. Were we to read "inception of the loss" as meaning the date of the fire, the operational effect of that decision would be to reduce the limitation period to considerably less than one year from the date the cause of action accrued.

Not only would such an abbreviated limitation period smack of unreasonableness on its face, we are unable to find a hint of legislative approval for it. Our review of the Code of Civil Procedure (AS Title 9) reveals but two provisions calling for a one-year statute of limitations.[10] No provision whatever is made for a limitation period of less than one year from the accrual of the cause of action. In this context, we are most hesitant to sustain a limitation period that is utterly without precedent in our state.

Accordingly, the decision of the lower court is affirmed.

FITZGERALD, J., not participating.

---

7. See National Indemnity Co. v. Flesher, 469 P.2d 360 (Alaska 1970); Continental Insurance Co. v. Bussell, 498 P.2d 706 (Alaska 1972).

8. *Id.* at 312 n. 76.5 of 469 P.2d.

9. Bollinger v. Natl. Fire Ins. Co., 147 P.2d 611 (Cal.1944).

10. AS 09.10.080; AS 09.10.090. The former concerns an action against a peace officer for escape of a person arrested on civil process. The latter concerns an action upon a statute for the "penalty given in whole or in part to the person who will prosecute for the same."