650 P.2d 441

**Raymond ZUCKERMAN and Gerald Zuckerman, Plaintiffs-Appellees,**

v.

**TRANSAMERICA INSURANCE COMPANY, a corporation, Defendant-Appellant.**

No. 15661.

Supreme Court of Arizona, En Banc.

July 26, 1982.

Rehearing Denied Sept. 14, 1982.

Gust, Rosenfeld, Divelbess & Henderson by Richard A. Segal, Phoenix, for defendant-appellant.

Fred J. Pain, Jr., Phoenix, for plaintiffs-appellees.

FELDMAN, Justice.

Transamerica appeals from the judgment of the trial court which awarded the plaintiff, Zuckerman, damages on a fire loss claim. We assumed jurisdiction pursuant to Rule 19(e), Rules of Civil Appellate Procedure, 17A A.R.S.

On July 27, 1975, a fire substantially destroyed property belonging to the plaintiff, Zuckerman. Transamerica had covered Zuckerman for fire loss by a policy which contained a clause requiring that any action for recovery on a claim insured under the policy must be commenced within twelve

months "after inception of the loss."[1] Within the one-year period, Zuckerman consulted counsel and also negotiated directly with Transamerica's adjuster. The adjuster informed Zuckerman that the loss was covered and that the company would pay the claim. Subsequently, it was agreed that the payment would be equal to the lowest of the three damage estimates that were to be obtained. The lowest estimate was $9,417.87. Accordingly, Zuckerman informed his attorney that he had reached a settlement agreement with the adjuster. This information was confirmed by the adjuster, who told the attorney that a draft would be forwarded for an amount equal to the lowest estimate.

A dispute then arose. Because Zuckerman did not intend to use the insurance proceeds to rebuild, the company took the position that the policy permitted it to reduce the settlement to "actual cash value," subject to a depreciation factor and excluding contractor's overhead and profit, sales tax, building permit fees and like items.[2] By letter of October 14, 1975, the company tendered a draft in the amount of $6,247.76 and notified Zuckerman's lawyer that "[i]n the event the building is repaired at some future date, we will at that time, *after inspection of same,* issue our draft for the difference...." It also indicated that Zuckerman had failed to file a proof of loss form as required by the policy and gave Zuckerman fifteen days from that date in which to comply with this requirement. Zuckerman's lawyer refused the tender, demanding the full $9,417.87 settlement.

On December 15, 1975, the company advised Zuckerman that it had received a document purporting to be a proof of loss from his attorney and claimed that the document was "DEFICIENT" in nine separate respects. Transamerica stated that the proof of loss form was "hereby rejected and refused as compliance with contract terms, and is enclosed herein for your disposal."[3] Therefore, Transamerica concluded, it "neither admits nor denies liability for any loss which may have occurred...." Nevertheless, Transamerica concluded its letter of December 15 by informing Zuckerman that "[i]n the interest of fairness, we will maintain [sic] to honor our offer ... in the amount of [$6,247.76]...."

Between December 15, 1975 and the summer of 1976, Zuckerman's attorney and the adjuster had several conversations regarding settlement of the claim. The adjuster's position was that the insurer was not required to pay the entire amount of the agreed settlement if Zuckerman was not going to rebuild. The lawyer stood on the settlement amount.

█ Finally, on September 30, 1976, approximately three months after expiration of the one-year policy limitation period, Zuckerman filed an action against Transamerica. The action was not brought on the settlement agreement, but rather for recovery of the loss under the policy coverage. After trial to the court, judgment was awarded to Zuckerman in the amount of $11,960. Transamerica appeals, and claims that the action was barred by the one-year limitation provision contained in the policy. Nevertheless, Transamerica acknowledges that it is willing to pay its insured the sum of $6,247.76, which was previously tendered in its offer of October 14, 1975. Since the case was tried without a jury and neither

---

1. The clause reads as follows:
 Suit. No suit or action in this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

2. The company's position is dubious on this point. The policy contains no clause permitting such deductions from the amount of the loss. It does provide that the company "does

insure" Zuckerman "to the extent of the actual cash value of the property ..., but not exceeding the amount which it *would cost* to repair or replace the property." (Emphasis supplied.) This is hardly equivalent to a provision that the insured must use the loss payment proceeds for the purpose of rebuilding.

3. The company's position on the alleged deficiencies in the proof of loss is also quite dubious.

party requested findings of fact or conclusions of law, we must sustain the judgment below on any legal theory which is supported by the evidence. *Nicholas v. Giles,* 102 Ariz. 130, 133, 426 P.2d 398, 401 (1967).

■ Zuckerman claims that the judgment can be supported on the theory that the trial court found that Transamerica was estopped to raise the defense of failure to file within the one-year period required by the policy.[4] This estoppel, Zuckerman claims, was based upon the continued negotiations of the parties with regard to whether Transamerica would pay the agreed settlement and the adjuster's statement to Zuckerman's lawyer that "you don't have to end up in court." Transamerica responds to this argument by pointing out that after unilaterally reducing the settlement it had clearly told the lawyer that it would never pay more than $6,247.76 and that the lawyer knew he would have to "end up in court" unless his client was willing to take the offer. In fact, "negotiations" were at a stalemate. Transamerica never offered or negotiated toward payment of more than the offer of $6,247.76.

■ Policy provisions such as that in question here have been held enforceable in Arizona. *Wells-Stewart Construction Co., Inc. v. General Insurance Company of America,* 10 Ariz.App. 590, 594, 461 P.2d 98, 102 (1969). However, the insurer's rights under such a provision may be lost by a waiver or estoppel resulting from continuing negotiations between the parties. *Shea North, Inc. v. Ohio Casualty Insurance Company,* 115 Ariz. 296, 298, 564 P.2d 1263, 1265 (App.1977). Zuckerman argues there were sufficient facts here to justify a conclusion by the trial court that the type of "negotiations" which took place were enough to establish the elements of such an estoppel.

A waiver or estoppel with respect to a contractual limitation period will exist if an insurer by its conduct induces its insured, by leading him to reasonably believe a settlement or adjustment of his claim will be effected without the necessity of bringing suit, to delay commencement of the action on the policy until after the limitation period has run.

*Shea North, Inc. v. Ohio Casualty Company,* 115 Ariz. at 298, 564 P.2d at 1265 (citations omitted).

■ It is difficult to conclude that the elements of estoppel required by *Wells-Stewart,* 10 Ariz.App. at 594, 461 P.2d at 102, and *Shea-North,* 115 Ariz. at 298, 564 P.2d at 1265, are present in this case. Transamerica had taken a final position and had indicated no willingness to go beyond the offer which had been extended. It did not lead Zuckerman's counsel to reasonably believe that settlement for any amount above that figure could be "effected without the necessity of bringing suit" and the record contains no suggestion that the delay in filing was due to any well-founded belief to the contrary. All offers of settlement made by insurance companies to the insured are not to be construed as waivers of the time limitation.

If this company, in making its offers to the insured, had made it clear that it had concluded this was the full extent of its liability, and that it was refusing to recognize any further liability, it could have relied upon the limitation of action clause within the policy.

*Hounshell v. American States Insurance Co.,* 67 Ohio St.2d 427, 433, 424 N.E.2d 311, 314 (1981). Thus, we hold that the "negotiation type" of estoppel raised in *Shea North, supra,* is not applicable here.

This, however, does not necessarily end our inquiry. The facts of this case lead us to question the wisdom of applying this clause in the circumstances presented here. At the outset, we note that the limitation for suit set by the clause establishes a significantly shorter time than the six-year period which ordinarily applies to actions on written contracts. *See* A.R.S. § 12–548; *Eureka-Security Fire & Marine Insurance*

---

4. Zuckerman also claims that the judgment could be supported on the theory that the trial court enforced the settlement agreement. We do not consider this theory because Zuckerman filed the action on the policy and not on the settlement contract.

*Co. v. Simon,* 1 Ariz.App. 274, 277, 401 P.2d 759, 762 (1965) (holding that absent a policy limitation clause, A.R.S. § 12–548 applies to actions on insurance contracts).

 Ordinarily, we would question the inherent validity of a policy provision which sets a limitation period so much shorter than that enacted by the legislature. The statutes of limitations "are declarations of public policy as well as a private right. . . ." *Ross v. Ross,* 96 Ariz. 249, 252, 393 P.2d 933, 934 (1964).[5] The clause in issue here, however, is given inherent validity by A.R.S. § 20–1115(A)(3), which permits but does not require that such a provision be inserted in certain types of insurance policies.

 However, the fact that the law permits the existence of such a clause does not mean that it must be applied in every situation. Statutory authorization may validate the clause against the claim that it is inherently void as contrary to the general statute of limitations, but it does not guarantee that the clause will be enforceable under all circumstances.

. . . While courts are diligent to protect insurance companies from fraudulent claims and to enforce all regulations necessary to their protection, it must not be forgotten that the primary function of insurance is to insure. When claims are honestly made care should be taken to prevent technical forfeitures such as would ensue from an unreasonable enforcement of a rule of procedure unrelated to the merits. . . . Statutes of limitation . . . in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disap-

peared. The theory is that even if one has a just claim it is unjust not to put an adversary on notice to defend within the period of limitation and the right to be free of stale claims in time comes to prevail over the right to prosecute them. . . . *The short statutory limitation period in the present case is the result of long insistence by insurance companies that they have additional protection against fraudulent proofs, which they could not meet if claims could be sued upon within four years as in the case of actions on other written instruments. \* \*.*

*Bollinger v. National Fire Insurance Co. of Hartford, Connecticut,* 25 Cal.2d 399, 406–07, 154 P.2d 399, 403 (1944) (citations omitted, emphasis supplied). Thus, it appears that by permitting insurance companies to shorten the limitation period, the legislature intended to allow them to protect themselves from fraudulent claims, not to relieve them from patently just ones.

 We note also that the clause in question forms part of the policy "conditions" which require that notice of loss and proof of claims be filed within certain time periods. These policy conditions are preprinted, form provisions attached to the policy. We have previously indicated that in the absence of prejudice, policy conditions which require the giving of "notice of loss" or the filing of "proof of loss" within a specified time cannot be applied to work a forfeiture of the insured's claim. *See Lindus v. Northern Insurance Co. of New York,* 103 Ariz. 160, 164, 438 P.2d 311, 315 (1968) (dealing with a "homeowners" liability policy).[6] In *Wells-Stewart, supra,* the court of appeals held that the *Lindus* rule

---

5. *Ross v. Ross, supra,* holds that a waiver of the statute of limitations is void. Of course we deal here with a shortening of the statute rather than a waiver. Generally, parties may contract with regard to shortening the statute, even though they cannot bargain not to plead it. 1A Corbin, Contracts § 218 at 311–312 (1963). However, while Corbin discusses the matter in terms of the parties "agreeing" to and "bargaining for" the shorter limitation period, these concepts have little to do with an

insurance "contract" such as that here under consideration.

6. It has also been held in Arizona that failure to comply with the "cooperation clause" of an insurance policy will not result in the forfeiture of rights arising thereunder unless the insurer establishes prejudice. *See Baumler v. State Farm Mutual Automobile Insurance Co.,* 493 F.2d 130, 139 (9th Cir. 1974).

**144**

was inapplicable to the condition limiting the time for instituting legal action. This holding was premised on the legislative grant of permission to the insertion of the clause. We have concluded that the holding of *Wells-Stewart* should be examined.[7]

In determining whether the *Lindus* rule should apply to the time for action condition of the form, we must acknowledge that parties are at liberty to contract and may, indeed, agree to shorten the statute of limitations from that which normally applies to claims. *See* 1A Corbin, *supra,* § 218 at 311–12; *Fireman's Fund Insurance Co. v. Sand Lake Lounge, Inc.,* 514 P.2d 223 (Alaska 1973). The general purpose of such a clause is

> ... to prevent the bringing and enforcement of stale claims, involving extra danger of fraud and mistake, .... An express provision fixing a shorter limit merely hastens the enforcement; and it is not made invalid by being included from the beginning in the contract to be enforced. *If held invalid, it must be on the ground that the terms are unconscionable and that unfair advantage has been taken of a claimant whose bargaining position was inferior.*

Id. at 226 (emphasis in original) (quoting from 1A Corbin, *supra,* § 218 at 311–12).

Thus, if this were the ordinary contract, we would have no hesitation in holding the parties to their agreement, providing the limitation period was not so short as to be against public policy and that the terms of the contract were not so unconscionable that unfair advantage was being taken of the person in an inferior bargaining position. Corbin, *id.* Whatever the historic origin of the insurance contract, we cannot close our eyes to present-day reality. An insurance agreement such as the ordinary fire policy in issue here is not a contract arrived at by negotiation between the parties. The insured is given no choice regarding terms and conditions of coverage which are contained on forms which the insured

seldom sees before purchase of the policy, which often are difficult to understand, and which usually are neither read nor expected to be read by either the person who sells the policy or the person who buys it. This is not the traditional method by which contracts, including insurance contracts, have been made. The changes which have come into the insurance business over the last 50 years reflect the industry's adjustment to modern business conditions and necessities. The rules pertaining to the enforcement of the "bargain" made by the parties evolved at a time when the parties negotiated an insurance contract; they have little or no relevance to the present methods of transacting most insurance business. This principle is being increasingly recognized by the courts. For example, in *Brakeman v. Potomac Insurance Co.,* 472 Pa. 66, 371 A.2d 193 (1977), the Pennsylvania Supreme Court held that the condition of the policy which required notice of the loss "as soon as practicable" would not be enforced absent a showing of prejudice to the insurance company. In reaching this result, the court overruled a line of prior decisions based upon the principle that courts were obliged to enforce the contractual agreements stated in the policy; the Pennsylvania Supreme Court reasoned as follows:

> The rationale underlying the strict contractual approach reflected in our past decisions is that courts should not presume to interfere with the freedom of private contracts and redraft insurance policy provisions where the intent of the parties is expressed by clear and unambiguous language. We are of the opinion, however, that this argument, based on the view that insurance policies are private contracts in the traditional sense, is no longer persuasive. Such a position fails to recognize the true nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the

---

**7.** This issue was not raised by the plaintiff. We requested, and received, supplementary briefs on the issue.

insured. The only aspect of the contract over which the insured can "bargain" is the monetary amount of coverage.... In *Cooper v. Government Employees Insurance Co.,* 51 N.J. 86, 237 A.2d 870 (1968), the Supreme Court of New Jersey stated:

> "... [W]e have recognized that the terms of an insurance policy are not talked out or bargained for as in the case of contracts generally, that the insured is chargeable with its terms because of a business utility rather than because he read or understood them, and hence an insurance contract should be read to accord with the reasonable expectation of the purchaser so far as its language will permit."

51 N.J. at 93, 237 A.2d at 873. Thus, an insured is not able to choose among a variety of insurance policies materially different with respect to notice requirements, and a proper analysis requires this reality be taken into account.

. . . .

... As was said in *Cooper v. Government Employees Insurance Co.,* supra:

> "[A]lthough the policy may speak of the notice provision in terms of 'condition precedent,' ... nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds."

51 N.J. at 93–94, 237 A.2d at 873–874.

We are reluctant, therefore, to allow an insurance company to refuse to provide that which it was paid for unless a sound reason exists for doing so.

. . . .

... In short, the function of a notice requirement is to protect the insurance company's interests from being prejudiced. Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation.... We have in the past excused a condition of forfeiture where to give it effect would have been purely arbitrary and without reason, and we are of the opinion that, in the absence of prejudice to the insurance company, such a situation exists in the context of a late notice of accident....

*Brakeman v. Potomac Insurance Company,* 472 Pa. at 72–76, 371 A.2d at 196–197 (citations and footnotes omitted).

 The same considerations are generally applicable to the conditions involving the time for bringing legal action. The provision is not one which is bargained for and its application in the face of an otherwise valid claim defeats the reasonable coverage expectations of the insured; in the absence of prejudice to the insurer, caused by the late filing of suit, enforcement leads to an effectual forfeiture of the claim, thus creating an inequitable result. Some courts have attempted to avoid this type of inequity by holding that the phrase "inception of the loss" which starts the policy limitation period running should be interpreted to mean the date on which the insurer made an outright denial of liability. *See Fireman's Fund Ins. Co. v. Sand Lake Lounge,* 514 P.2d at 227, and cases cited therein. We choose not to take such a strained approach; the phrase "inception of the loss" is not ambiguous and clearly denotes the time at which the loss occurs.

 We prefer, rather, a rule consistent with the modern-day business methods of the insurance industry. It is a rule which we have already followed with respect to other policy conditions. *See Lindus v. Northern Ins. Co.,* supra. We therefore disapprove of the result reached on this issue in *Wells-Stewart Construction Co.,*

*Inc. v. General Insurance Co. of America, supra,* and hold that while the policy condition shortening the applicable statute is valid pursuant to A.R.S. § 20–1115(A)(3), the insurer may be estopped from raising a defense based upon such an adhesive clause where the enforcement of the clause would work an unjust forfeiture. The key factor in the determination of this issue is the question of whether the insurer has shown prejudice by reason of the delay in filing suit. In the absence of such a showing, it is fair to say that the purpose for which the insurer was given permission to insert the clause will not be served by its enforcement. In reaching this conclusion, we do not ignore A.R.S. § 20–1115. However, we must recognize that the legislature has neither enacted a one-year statute of limitations nor required the adoption of such a provision in the contract. It has merely left the insurer free to insert such a clause, provided that the time shall not be limited to a period of less than one year. A.R.S. § 20–1115(A)(3). While a limitation prescribed by statute and contained in the policy is statutory in nature, a reduction in the limitation which is allowed by law is contractual rather than statutory. 20A Appleman, *Insurance Law and Practice* § 11582, p. 387–88 (1980). We recognize, therefore, that the legislative grant of permission for insertion of such a clause is an enactment intended to prevent any claim that the clause is invalid as contrary to public policy. Thus, the statute permits the insurer to contract for the benefit of its business affairs, but does not raise the clause to the dignity of a statute of limitations. See 51 Am.Jur.2d, *Limitation of Actions* § 64 at 643 (1970) (citing *Planet Construction Co. v. Board of Education,* 7 N.Y.2d 381, 385, 198 N.Y.S.2d 68, 165 N.E.2d 758, 760 (1960)); *Forman v. Home Insurance Co.,* 174 Misc. 478, 21 N.Y.S.2d 445 (1940). The rule which we have adopted puts the limitation clause on the same footing as its "sister clauses" in the printed conditions attached to the policy. The limitation clause, notice of loss

clause, proof of loss clause, together with the cooperation clause, are all adhesive in nature and are the result of neither choice nor negotiation. We do not write a contract for the parties by holding these provisions unenforceable under all circumstances.[8] We do apply to the limitation provision, as we have applied to others, a rule that the conditions will be enforceable despite their adhesive nature unless it is inequitable to enforce them. Where the conditions do no more than provide a trap for the unwary, the insurer will be estopped to raise them. We thereby grant the consumer his reasonable expectation that coverage will not be defeated by the existence of provisions which were not negotiated and in the ordinary case are unknown to the insured. See *Sparks v. Republic National Life Ins. Co.,* 132 Ariz. 529, 647 P.2d 1127 (1982). Such decisions do no more than allow the common law to evolve in conformity with the changes which the insurance industry has adopted in its business practices. The clause will be enforced when the reasons for its existence are thereby served and will not be applied when to do so would be to defeat the basic intent of the parties in entering into the insurance transaction.

Further, we emphasize that the principles and rules established by this case are applicable only to those situations in which the terms and conditions of the policy have not been truly negotiated by the parties. In those insurance agreements in which the parties have bargained or had the opportunity to bargain for the entire contract, ordinary rules of contractual construction should continue to be applied. The reason for this is simply that in such transactions there is an intent of the parties to be determined and enforced.

▮ Turning again to the facts of this case, it is obvious that Transamerica was not prejudiced by the fact that suit was brought more than one year after the loss occurred. There was never any dispute regarding the loss, its cause or the existence

8. This approach has been suggested with regard to such adhesive provisions. *See,* Oldfather, "Toward a Usable Method of Judicial Review of the Adhesion Contractor's Lawmaking," 16 Kansas L.R. 303 (1968).

of coverage for the loss. Nor was there any dispute regarding the amount of damage; that figure was determined by the agreement to accept the lowest of three damages estimates to be obtained by Zuckerman. There seems no question but that Zuckerman's claim is valid; the amount of the claim was established by getting the estimates required by the insurer itself. Enforcement of the policy limitation provision in this case would cause a forfeiture of a patently valid claim, would not serve the purpose for which the limitation clause exists, and would work an injustice to the plaintiff. It is also clear that the parties in this case did not negotiate the conditions in question and that the "condition" portion of the insurance policy is adhesive. We hold, therefore, that the insurer is estopped to enforce the clause and that the judgment of the trial court is affirmed.

GORDON, V. C. J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice dissenting:

Although professing not to rewrite the insurance contract, the court proceeds to do just that. I note my dissent to such action.

The one-year limitation clause in the policy at issue is common throughout the insurance industry. The cases upholding the validity of similar provisions are legion. A number of jurisdictions, without benefit of statutory authority, have held such limitation provisions to be enforceable. See Annot., 6 A.L.R.3d 1197, 1210–11 (1966).

The court acknowledges that there are reasonable grounds for requiring a shorter limitation period for bringing property damage claims on insurance contracts. Whether this court concedes the point is not very important because the legislature has recognized the fact by specifically authorizing property insurance policies to contain a shorter period of limitation than that provided for other contract claims. A.R.S. § 20–1115.

The majority, citing *Planet Construction Corp. v. Board of Education, supra,* contend that the legislative action does not raise the insurance claim limitation clause to the dignity of a statute of limitation. It should be noted that the case relied upon is rarely cited for the foregoing proposition. The important fact is that the legislative policy has been clearly set forth, and absent such policy statement by the legislature, it is debatable whether such a clause would be enforceable in Arizona. *Cf. Ross v. Ross, supra.* The statute, A.R.S. § 20–1115, removes all doubt on the issue by specifically allowing an insurance contract to provide for a shorter period than the general statute of limitation within which action must be brought on a property insurance claim.

The court's decision today, for all practical purposes, frustrates the legislative policy by eliminating the shorter period of limitation in the insurance contract. The new clause written for the parties by the majority translates into a statement that the one-year limitation will not be enforced if a court thinks that the enforcement of the period of limitation would be unjust. This standard, or non-standard, is advanced by the court as a "rule consistent with the modern-day business methods of the insurance industry."

The present decision destroys what I view as the public policy of this state. The rule fashioned today so severely limits the legislative-approved limitation clause that it virtually repeals it.