**ALASKA ENERGY AUTHORITY, f/k/a Alaska Power Authority, Appellant,**

· v.

**FAIRMONT INSURANCE COMPANY, a California Corporation, Appellee.**

No. S–4862.

Supreme Court of Alaska.

Jan. 22, 1993.

James F. Klasen, Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellant.

David R. Trachtenberg and Traeger Machetanz, Oles, Morrison & Rinker, Seattle, WA, for appellee.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This case arises out of a claim by the Alaska Energy Authority (AEA), formerly the Alaska Power Authority, against a contractor's performance bond issued by Fairmont Insurance Company (Fairmont). AEA appeals a summary judgment holding that the time limitation in the performance bond barred AEA from bringing suit. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

AEA entered into a contract with Wyman Construction Company (Wyman) for the repair and reconstruction of the Chester Lake Dam. The contract was for the sum of $1,527,000. Fairmont executed performance and payment bonds in the amount of $1,527,000.

In June 1986 the repair to the dam was substantially complete at considerably lower cost than the engineer's estimate. Wyman and AEA then reached an agreement for the design and construction of a new water line to transport water from the dam to the community of Metlakatla. The

change order was for $1,119,000. It gave Wyman an extension of time to November 1, 1986 to complete the entire project.

Wyman completed the work. In November 1986 the pipeline was pressure tested and accepted by AEA. On November 10, 1987 final payment on the contract was made to Wyman by AEA.

In the interim Fairmont wrote the president of Wyman, noting that the amount of the bond was $1,527,000, but that the final contract price was $2,676,051. Fairmont stated that with the increase in the contract price the bonding company was entitled to an additional premium to cover the overrun. Fairmont later collected the premium requested.

In August 1988 a penstock support installed into the underlying rock failed. AEA claimed the failure was due to improper grouting of anchors. At the request of AEA, Wyman repaired the support.

In December 1988 AEA notified Wyman and Fairmont that lab results on the failed support indicated the grout material used to install the rock anchors was not mixed as required. AEA feared all of the anchors might be deficient for the same reason. In July 1989 further testing by AEA confirmed that the process used for the installation of the failed anchors was not acceptable. AEA concluded that all similarly installed anchors were faulty.

Wyman failed to respond to AEA's request to repair the anchors. In August AEA declared Wyman in default of its contract and called upon Fairmont to remedy the default. In October Fairmont wrote AEA stating that tests had been conducted only on the failed support, and that no tests showed deficiencies actually existed in any other supports. Fairmont suggested that AEA was premature in finding Wyman in default.

In February 1990 Fairmont concluded that it was not liable on the bond because of the time limitations in the bond.[1] Fairmont filed a complaint against AEA for declaratory relief. AEA filed a counterclaim based on Fairmont's refusal to honor its bond. In due course Superior Court Judge Dana Fabe granted Fairmont's motion for summary judgment.

AEA moved for reconsideration of the summary judgment. Also it filed a First Amended Answer and a counterclaim for breach of the duty of good faith and fair dealing. Judge Fabe denied AEA's motion for reconsideration, entered final judgment in favor of Fairmont, and awarded Fairmont $15,000 for attorney's fees. This appeal followed.

## II. STANDARD OF REVIEW

■ The superior court granted summary judgment to Fairmont based on the two-year limitation period in the bond. This is a matter of contract interpretation. Interpretation of a contract is a question of law for which the reviewing court uses independent judgment. *Jackson v. Barbero*, 776 P.2d 786, 788 (Alaska 1989). "On questions of law, this court is not bound by the lower court's decision; ... Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

## III. DISCUSSION

### A. THE TWO-YEAR TIME LIMITATION IN THE PERFORMANCE BOND.

■ The performance bond includes the following clause:

Any suit under this bond shall be instituted before the expiration of two years from the date on which final payment under the [c]ontract falls due.

1. Fairmont also claims the change in the contract to build the pipeline was outside the scope of the bond. AEA claims Fairmont accepted the change by accepting additional premiums. Fairmont also claims it is relieved of liability because AEA failed to follow state procurement regulations. AEA claims it did not violate state procurement regulations and even if it did, Fairmont would not be relieved of liability. Because the superior court did not reach these issues, they are not properly before the court.

The superior court found the final payment on the contract was paid on November 10, 1987. No law suit was filed on the bond before November 10, 1989. As AEA failed to sue within two years of the final payment, the superior court ruled AEA's suit on the bond was time barred.

AEA asserts that the time limitation did not begin to run until Fairmont denied liability on the claim.[2] In *Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223, 227 (Alaska 1973), this court concluded that insurance clauses requiring suit to be filed within twelve months of "the inception of the loss" mean that suit must be filed within a year after notification of the decision to deny coverage.

In *Fireman's*, the court drew upon the Uniform Commercial Code (UCC) for its analysis. Under the UCC, "parties may reduce the period of limitation to not less than one year" from the time the cause of action accrues. *Id.* at 227, quoting AS 45.05.042(a) (renumbered as AS 45.02.-725(a)). The court reasoned that the cause of action does not accrue until the claim is denied, and the contract may not limit the right to bring suit to less than a year from that time. *Id.*

AEA points out that its claim was not denied until February 1990. AEA filed its counterclaim to the declaratory judgment action in July 1990, only six months after the "claim arose." AEA argues that the contractual time limit may not limit the ability to bring suit to less than one year from the date the claim is denied.

Fairmont argues that the two-year limitation clause is clear and unambiguous. The bond does not create a limit from the date a claim arises, but from the date of the final payment on the contract. Fairmont argues that as this is a performance bond, the bond's liability is limited by the date the contract is completed. Fairmont claims there is no dispute that "final payment occurred November 1987." Fairmont asserts AEA did not institute suit within two years of the final payment, and therefore its exposure had ended.

We agree with Fairmont that the time limitation to bring suit on the bond began running on the day of the final payment. The time limitation provides for two years after the final payment on the contract to file suit if any problems are discovered with the project.

■ However, our prior decisions have held contractual time limitations to bring suit will not be enforced without some showing of prejudice. *Estes v. Alaska Ins. Guar. Ass'n*, 774 P.2d 1315 (Alaska 1989). In *Estes* a music store was destroyed by fire. Soon after the fire, Estes submitted proof of loss. Ten months later the insurance company denied Estes' claim after an investigation. Estes then waited one year and seven days to file a law suit. *Id.* at 1316. The insurance company moved for summary judgment based upon the failure to comply with a policy provision requiring any suit on the policy to be commenced "within one year after the loss occurs." The trial court granted the motion. *Id.*

In *Estes* we held that the "time limit on commencement of suit clauses, ... should [ ] be reviewed on the basis of whether [its] application in a particular case advances the purpose for which [it was] included in the policy." *Id.* at 1318. We concluded that the purpose of the clause was to protect the insurance company from prejudice due to delay. *Id.* Since the insurance company had not shown it was prejudiced by

---

**2.** AEA also argues that "final payment" should be interpreted to include payments made by Wyman. Under the contract Wyman was to pay for support services, utilities, tools and materials. Thus when Wyman returned to make repairs in September 1988 it made payments and AEA complied with the limitation by filing suit within two years. But this contract called for Wyman to complete a pipeline and for AEA to pay money. It is not reasonable to interpret payment to include Wyman's expenses.

AEA argues that the clause "final payment falls due" means amounts due when all work required by the contract is completed. Because AEA found Wyman had not completed the grouting pursuant to the contract, final payment has not yet fallen due. This interpretation would allow a suit at any time in the future if AEA discovered a defect. This would defeat the purpose of a limitation. Because we interpret contracts to give effect to all terms, we reject AEA's argument.

the delay in filing the suit, we reversed the grant of summary judgment. *Id.* at 1320.

In this case AEA claims the purpose of the clause is to 1) give AEA time to file suit, and 2) give notice to the surety that there is a problem with the contract. AEA argues that Fairmont was notified of the potential claim as early as December 21, 1988, when Wyman was notified that AEA assumed the anchors were defective. In July 1989 Wyman and Fairmont were notified that tests confirmed AEA's belief that the anchors were improperly installed. In August, after Wyman failed to respond to AEA's request to repair the pipeline, AEA declared Wyman in default and called upon Fairmont to remedy the default. Fairmont requested that more testing be done, and AEA complied. Fairmont finally denied the claim only after two years had passed from the final payment.

Fairmont was put on notice and was investigating the claim prior to expiration of the two year limit. The purpose of the clause was satisfied. Fairmont was not prejudiced by a delay in filing suit. AEA substantially performed by notifying Fairmont in a timely fashion. Fairmont was not harmed by AEA's attempt to comply with Fairmont's requests for further testing prior to filing a law suit.

Fairmont argues that the general rule of contracts, upholding the validity of time limitations, should be applied. "If held invalid, it must be on the ground that the terms are unconscionable and that unfair advantage has been taken of a claimant whose bargaining position was inferior." *Fireman's,* 514 P.2d at 226, quoting Arthur

L. Corbin, *Contracts* § 218 at 312 (1963). The reason not to follow the general rule in *Estes* was that the insurance contract was dictated primarily by the insurance company. *Estes,* 774 P.2d at 1317. "[W]hen the element of bargain is not present, the authority of the 'stipulated' provision becomes problematic." *Id.* at 1318.

Fairmont argues that the rationale of *Estes* is inapplicable to this case because AEA, not Fairmont, drafted the bond and the time limitation. AEA had time to file a suit prior to the expiration of the two-year limit and failed to do so. Fairmont argues that there is no reason for the court to give AEA additional time to sue on the bond.

 Fairmont's argument distinguishing *Estes* is unpersuasive. The language of this bond is practically identical to the American Institute of Architects standard performance bond form A311, which has been used by the performance bond industry for over twenty years. Adoption of the industry norm in the bond does not make *Estes* distinguishable. A limitation on a commencement of suit clause should be enforced only when it serves the purpose for which it was included in the contract. *Estes,* 774 P.2d at 1320. A formalistic application of a contractual time limitation will not bar the right to sue absent some showing of prejudice.[3] In this case Fairmont was well aware of the claim before the time limitation had expired. Fairmont was engaged in the process of investigating the claim as early as February 1989. A requirement that suit be filed while the process of investigation is proceeding will not be enforced without a showing of prej-

---

**3.** Although not argued by AEA, we note that this holding is consistent with common law of contracts. While the failure to bring suit within two years is a breach of the contract, the breach is not material and is called a partial breach. A breach by non-performance gives rise to a claim for total breach only if it substantially impairs the value of the contract to the injured party. Restatement (Second) of Contracts § 243(4) (1981). "For a partial breach the injured party can maintain action at once; but he is not permitted to stop further performance." Arthur L. Corbin, *Contracts,* § 946 at 811 (1951). "Although every breach gives rise to a claim for

damages, ... [t]he injured party's remaining duties under the contract are not necessarily discharged." Restatement (Second) of Contracts § 236 cmt. b (1981).

The time limitation in the bond creates a mutual duty, requiring AEA to notify Fairmont, and requiring Fairmont to guarantee the performance bond for two years after the final payment. The time limitation in the performance bond is valid. However, AEA's breach of this duty has not harmed Fairmont. As the value of the contract was not impaired, this is only a partial breach. Fairmont is not relieved of the responsibility it contracted to undertake.

udice.[4] The superior court thus erred in granting summary judgment.[5]

## IV. CONCLUSION

The failure to file suit within the time limitation of the contract does not bar the claims of AEA without a showing of prejudice by Fairmont. The grant of summary judgment barring AEA's claim pursuant to the performance bond is REVERSED. As Fairmont is no longer the prevailing party, the grant of attorney's fees is also REVERSED.

---

4. AEA argues that Fairmont waived its right to rely upon the time limit by suggesting AEA was premature in finding Wyman in default. AEA also claims Fairmont should be estopped from relying on the time limitation after requesting AEA to investigate further before it responded to AEA's claim. Fairmont claims it notified AEA it was reserving all rights during the investigation. Fairmont argues there is no evidence of waiver or right to estoppel. Because we conclude the time limit does not bar AEA's claim, we do not reach the question whether Fairmont's general statement reserving rights in a letter requesting further testing, sent just eleven days before the expiration of the time limitation, precludes a finding of waiver or estoppel.

5. AEA also appeals the dismissal of its amended counterclaim. A trial court's disposition of a motion to amend a complaint is reviewed for abuse of discretion. *United States Fire Ins. Co. v. Schnabel*, 504 P.2d 847, 854 (Alaska 1972). On remand the superior court is free to exercise discretion and decide whether to accept the amended counterclaim. We note that AEA was not entitled to amend its complaint without leave of the court after Fairmont had moved for summary judgment. The superior court was within its discretion to refuse a new counterclaim a full month after the court granted summary judgment. "It is a long established maxim of equity jurisprudence that parties may not sleep upon their rights." *Shooshanian v. Wagner*, 672 P.2d 455, 458 (Alaska 1983).