77 P.3d 1251

**DECCA DESIGN BUILD, INC.,**
an Arizona corporation,
Plaintiff–Appellant,

v.

**AMERICAN AUTOMOBILE INSURANCE COMPANY,** a foreign corporation, Defendant–Appellee.

No. 1 CA–CV 02–0519.

Court of Appeals of Arizona,
Division 1, Department C.

Oct. 2, 2003.

As Amended Oct. 7 and Oct. 22, 2003.

**302**

Koeller, Nebeker, Carlson & Haluck, LLP, Phoenix, By William A. Nebeker, Rosary A. Hernandez, Thomas A. Walcott, Attorneys for Appellant.

Jennings, Haug & Cunningham, LLP, Phoenix, By Chad L. Schexnayder, Matthew H. Sloan, Attorneys for Appellee.

## OPINION

LANKFORD, Judge.

¶ 1 A general contractor, Decca Design Build, Inc., appeals from the superior court's summary judgment for American Automobile Insurance Company. The superior court barred Decca's action against American on its performance bond, issued to assure performance by a subcontractor, as untimely. Whether the action was untimely depends on when "final payment" was "due" under the subcontract. For the following reasons, we reverse.

¶ 2 The basic facts are undisputed. Decca acted as general contractor on an apartment construction project. Decca hired Precision Mechanical, Inc. as the plumbing subcontractor. American issued a performance bond to secure Precision's performance under the subcontract.

¶ 3 After completion of the project, the Owner withheld payment to Decca of about $150,000 of the contract amount, and Decca sued for payment. The Owner counterclaimed, alleging defects in the construction. Decca filed a third party complaint alleging that the defects were attributable to numerous subcontractors, including Precision. Decca also brought this action against American on May 29, 2001, alleging that Precision had defaulted on its obligations under the subcontract and sought payment under the bond.

¶ 4 The superior court granted American's summary judgment motion based on the untimeliness of Decca's action against it. It determined that the final payment under the subcontract fell due more than two years before Decca filed its action on May 29, 2001. The bond requires that the action be brought within two years of the time final payment became due under the subcontract.

¶ 5 Decca timely appeals. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(B) (2003).

¶ 6 The issue on appeal is whether there was a genuine, material issue of fact or question of law as to the date on which the period of limitations under the bond began to run. In reviewing a summary judgment, we "determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in its application of the law." *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993).

¶ 7 Summary judgment is appropriate when there are no genuine issues of material fact, *Orme School v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990), and "only when one inference can be drawn from the undisputed facts, and those facts show that the moving party is entitled to judgment as a matter of law." *Mohave Elec. Co–Op. Inc. v. Byers*, 189 Ariz. 292, 302, 942 P.2d 451, 461 (App.1997).

¶ 8 The time for filing an action under the performance bond is prescribed by the bond. The bond states that the action must be brought within two years of when the final payment under the subcontract comes due.[1] Such limitations clauses are enforceable. *See Zuckerman v. Transamerica Ins. Co.*, 133 Ariz. 139, 142–43, 650 P.2d 441, 444–45 (1982) (upholding an insurance policy's one-year limitations period, which was significantly shorter than the six-year statutory period applicable to written contracts). Thus, the dispositive question is when final payment was due under the subcontract.

¶ 9 To determine when final payment fell due under the subcontract, we first look at the subcontract. The problem is that the

---

1. The bond provides: "Any suit under this bond must be instituted before the expiration of two (2) years from the date on which final payment under the subcontract falls due."

subcontract does not define "final payment." The performance bond was drafted on a standard AIA[2] bond form. That form apparently contemplated that an AIA subcontract form—which defines final payment—would be used. However, the subcontract was not the standard AIA form and did not define "final payment."

■ ¶ 10 The competing interpretations of the subcontract are as follows. Decca argues that final payment is due after it receives payment from Owner for all of the work, that is, after the entire project is complete. American contends that final payment came due after Owner paid Decca for Precision's work, adding that the Owner's refusal to pay the balance was due to other subcontractors' work. We determine that the former is the only reasonable interpretation.

¶ 11 Even though the subcontract does not define "final payment," it contains payment provisions that shed light on when final payment is due. The subcontract provides for two types of payments: progress and retention payments. We first consider paragraph III(a), the progress payment clause, of the subcontract. Paragraph III(a) provides:

> It is expressly understood and agreed that payment is dependent upon and shall not be due to the SUBCONTRACTOR until five (5) days after the occurrence of the following items, which shall be conditions precedent to payment: (i) furnishing of all necessary documents by the SUBCONTRACTOR including lien waivers as set forth in paragraph IV and "As Built" plans (ii) receipt by CONTRACTOR of contract payments from the Owner for the SUBCONTRACTOR'S work, which shall be the sole pool of funds from which payment to the SUBCONTRACTOR shall be made.

Paragraph III(a) establishes the amount, manner, and conditions precedent that have to be met before Precision is paid for "performance of the work." Paragraph III(a) states that Precision will be paid a total of $589,475 payable in monthly progress payments after Precision submits necessary documents, such as lien waivers, and after Decca receives payment from Owner for "SUBCONTRACTOR'S work." The two conditions precedent in paragraph III(a) have been met; Precision submitted its lien waivers, and Owner paid Decca for Precision's work.[3] Thus, Precision was entitled to the progress payments, and those payments fell due long before Decca filed this claim.

¶ 12 Progress payments are not the only payments under the subcontract, however. Paragraph III(b), the retention clause of the subcontract, provides: "Retention in the amount of ten percent (10%) will be withheld on all progress payments through project completion, final acceptance and payment by Owner." The subcontract clearly contemplates that a balance due in the form of retention will remain after all progress payments have been made. Paragraph III(b) thus states that Decca will not pay the full balance until the conditions of paragraph III(b) are met.

¶ 13 We now consider whether, under the subcontract, this payment of the balance in the form of retention constitutes "final" payment. For the reasons that follow, we hold that the retention payment is the final payment under the subcontract.

¶ 14 First, the parties agree that final payment includes retention amounts.[4] Second, even though the subcontract does not define "final payment," the meaning of "final" is unambiguous. "Final" means: "not to be altered or undone ... being the last in a series, process or progress ... of or relating to the ultimate purpose or result of a process ... relating to or occurring at the end or conclusion." *Webster's New Collegiate Dictionary* 463 (9th ed.1988). Thus, Precision cannot receive final payment until it receives

---

2. American Institute of Architects.

3. The parties argue the effect of the lien waivers on the bond's time limitation. Precision's lien waivers are immaterial to the final payment obligation. As we discuss in the following text, other payment provisions contained in paragraph III(b) govern when final payment is due.

4. American's brief states: "[American] does not dispute that the payment of the ten percent retention amount would constitute final payment under the subcontract."

**304**

the last payment. Under the subcontract, the last amount owed to Precision is the retention amount.

¶ 15 Third, construing final payment as payment of retention is consistent with the general contract. Under paragraph (V) of the subcontract, Precision accepted responsibility for knowledge of the entire contents of the contract. The parties to the subcontract clearly contracted with reference to the general contract, and paragraph III(b) itself refers to obligations under the general contract. Thus, the two documents should be interpreted consistently with one another. Final payment is defined in the general contract and includes retention amounts. Article Six of the general contract provides:

> Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to Contractor when (1) the Contract has been fully performed by the Contractor except for the Contractor's responsibility to correct nonconforming Work as provided in Subparagraph 12.2.2 of the General Conditions and to satisfy other requirements, if any, which necessarily survive final payment: and (2) final Certificate for Payment had been issued by the Architect: such final payment shall be made by the Owner not more than 30 days after the issuance of the Architect's final Certificate of Payment. . . .

The general contract thus provides that the final payment includes all of the unpaid balance, including retention. We therefore hold that, under the subcontract, final payment is not made until both progress payments and retention have been paid.

■ ¶ 16 Having determined that under paragraph III(b), the retention payment constitutes final payment, we now consider whether conditions for this payment were met, thus making the payments "due." The retention provision requires that three conditions be met before retention payment comes due. The three conditions are: project completion, final acceptance, and payment by

Owner. The parties dispute whether "payment by Owner" means payment for subcontractor's work or payment for the entire project. We need not decide what "payment by Owner" means because the other two conditions, project completion and final acceptance, have not been met.[5]

¶ 17 "Project completion" is completion of all the work under the general contract. The general contract, on its cover page, states: "The Project is: Ridge View Apartments, 13225 N. Fountain Hills Blvd., Fountain Hills, Arizona." Moreover, while the retention payment provisions of subcontract paragraph III(b) refer to payments upon "project completion," the progress payment provision in paragraph III(a) refers to payments for "subcontractor's work." Thus, the subcontract clearly intends that payment of retention—i.e., final payment—be made not at the end of a particular subcontractor's work, but when the apartment project is complete.

¶ 18 Having determined that "project completion" means full completion of the work on the apartment project, we now consider whether the project is fully complete. It is not. Condition 9.10.1 of the general contract requires that final payment and final completion occur only after receipt of a final application for payment, after the architect finds the work acceptable and fully completed, and after the architect issues a final certificate for payment indicating that it is due and payable. The record fails to show that these conditions have been met. The architect submitted a certificate of *substantial* completion,[6] but the record shows no certificate of *final* completion. Therefore, project completion has not occurred.

¶ 19 The second retention condition, final acceptance by Owner, also has not been met. Failure of Owner's acceptance is evidenced by the Owner's refusal to pay Decca all of the retention amount and by the counterclaim Owner brought against Decca. Because under paragraph III(b) of the subcontract the final payment does not fall due until

---

5. As far as our record shows, Owner is still withholding about $45,000 of the general contract amount from Decca.

6. Substantial completion is defined in the general contract as readiness of the project for use or occupancy, and the contract contemplates that this may occur before all work is finished and thus before final completion.

project completion and final acceptance under the general contract, the final subcontract payment has not come due. Because final payment under the subcontract has not yet come due, the period of limitations under the bond has not begun to run. Therefore, Decca's action against American was timely filed.

¶ 20 American argues that final payment has come due because Precision has been fully paid. First, no direct evidence of that fact was presented; American relies instead on the fact that Precision submitted lien waivers. Second, when Precision may have been paid is not the guidepost under the bond, which makes dispositive the time when the final payment is *due*. Of course, an obligation may be paid before it is due either mistakenly or willingly.[7]

¶ 21 Because the obligation to pay retention under the subcontract is the time final payment falls due, and because the conditions precedent to trigger that obligation have not been met, the limitations period under the performance bond has not begun to run. Decca may pursue its claim against American on the bond.

¶ 22 Accordingly, we reverse the superior court's summary judgment in favor of American and remand for further proceedings.

CONCURRING: CECIL B. PATTERSON, JR., Presiding Judge, and PHILIP HALL, Judge.

---

7. This situation is distinguishable from *Able Distributing Co., Inc. v. James Lampe, General Contractor*, 160 Ariz. 399, 773 P.2d 504 (App.1989). In that case, we held that a materialman does not forfeit its right to final payment because of another materialman's lien. *Id.* at 405, 773 P.2d at 510. *Able* involved a final payment clause providing that:

> Final payment, including the ten percent retention, shall be due and payable when the work described in this Subcontract is fully completed and performed in accordance with the Contract Documents, is satisfactory to the OWNER, and Notice of Completion of the project has been recorded.

> Before issuance of the final payment, the Subcontractor shall submit evidence satisfactory to the OWNER that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontractor's work [had] been paid.

*Id.* at 403–04, 773 P.2d at 508–09. In that case a materialman brought an action against the general contractor seeking payment. *Id.* at 401, 773 P.2d at 506. The general contractor argued that the express language of the contract stated that final payment was not yet due because the property was subject to two liens from two other materialmen. *Id.* at 405, 773 P.2d at 510. This Court rejected the general contractor's argument because its interpretation meant that the materialman would never be able to obtain final payment until the other materialmen released their liens. We held that a literal interpretation of the final payment provision would force the materialman to forfeit its right to final payment. *Id.* We also noted that "a contractual provision generally should not be construed as a condition precedent *unless* the provision plainly and unambiguously requires such construction." (Emphasis added.) *Id.* at 403, 773 P.2d at 508. We determined that all the conditions precedent under that payment clause had been met. *Id.* at 404–05, 773 P.2d at 509–10.

However, this situation differs from *Able*. The subcontract plainly and unambiguously requires project completion, final acceptance and payment by Owner before the retention payment comes due. Also, unlike *Able*, and as we previously discussed, in this instance, the conditions precedent for project completion and final acceptance have not yet occurred. *Able* is not applicable.

Moreover, our determination is not unfair to Precision. First, Precision may already have been paid in full for its work. This is not a case in which the general contractor refused to pay Precision for its work. The sole issue we resolve today is whether the period of limitations has begun to run under the performance bond. Furthermore, we express no opinion that a subcontractor cannot avail itself of an extracontractual remedy when it has fully completed its work and yet is not paid solely because of deficiencies in the work of other subcontractors.