AMERITRUST COMPANY NATIONAL ASSOCIATION, APPELLANT, v. WEST AMERICAN INSURANCE COMPANY, APPELLEE.

(No. 51887—Decided
April 6, 1987.)

*Robert D. Rosewater* and *Arthur J. Rotatori,* for appellant.

*Harold H. Reader* and *Jeffrey R. Wahl,* for appellee.

ANN MCMANAMON, J. AmeriTrust Company National Association ("the bank") timely appeals from an adverse summary judgment in its suit against appellee West American Insurance Company ("the insurer"). The bank sought to recover as loss payee under a fire insurance policy issued by the insurer. The bank presents two assignments of error for review,[1] neither of which merits a reversal.

In May 1983 Petar and Ljubica Perisic obtained a mortgage loan from the bank for the purchase of residential property. Pursuant to the mortgage agreement, Petar Perisic obtained insurance on the property from the insurer designating the bank as first mortgagee. The policy contained a standard mortgage clause which provided for payment upon loss to the Perisics and the bank "as interests appear," *i.e.,* the bank's interest was pro-

tected to the extent of the outstanding indebtedness. The clause further preserved the bank's claim in the event of a denial of the Perisics' claim.

On December 19, 1983, the Perisic residence was extensively damaged by fire. The insurer retained an investigator who concluded within several days that the fire had been deliberately set. The Perisics were both indicted and ultimately pleaded guilty to arson on July 11, 1984.

Approximately fourteen months after the fire, the bank notified the insurer of its intent to file a claim under the policy. The insurer promptly denied liability and declined payment.

The bank's complaint, filed a full nineteen months after the fire, sought recovery, alternatively, under the policy to the extent of its interest, and in tort for punitive damages premised upon the insurer's alleged bad faith in its dealings with the bank. In its answer and motion for summary judgment, the insurer relied upon a limitation in the policy which provided:

"Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the occurrence causing loss or damage."

The insurer further denied it acted in bad faith and argued that this theory was likewise barred by the one-year limitation.

The trial court granted the insurer's motion for summary judgment without opinion and the bank perfected this appeal.

---

[1] Appellant's assignments of error are:

"The court of common pleas erred in granting defendant's motion for summary judgment:

"(1) By holding that an action by a loss payee against an insurer is barred by a deadline contained in the policy even though (a) the loss payee did not have a copy of the policy and was unaware of the deadline and (b) the delay did not prejudice the insurer; and

"(2) By holding that an action based on bad faith was barred by a deadline contained in the policy."

Civ. R. 56(C), governing procedure upon motion for summary judgment, states in part:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

In its first assignment of error, the bank urges that a material issue of fact exists as to the bank's lack of notice of the one-year limitation. In support of this contention, the bank filed the affidavit of Margie Bracken-Ruggaard, a bank officer in charge of processing mortgage loans. She averred that her knowledge of the policy was limited to information contained in the certificate of insurance, and that the bank does not receive copies of the actual policies. Attached to her affidavit was a copy of a "Duplicate Homeowner Renewal Certificate" setting forth the coverages and liability limits for the Perisics' policy. The certificate does not contain the one-year provision or any of the other conditions or exclusions contained in the policy itself.

This alleged lack of notice was contested with the affidavit of Richard L. Snyder, the insurer's claims representative, who stated that the policy "was coded in such a way as to indicate that a copy was sent to [the bank] * * *."

The bank concedes the general validity of clauses in insurance contracts which limit the time within which an action may be brought. Such clauses are enforceable provided the limitation period is "not unreasonable." *Appel* v. *Cooper Ins. Co.* (1907), 76 Ohio St. 52, 80 N.E. 955, paragraph one of the syllabus. Nor does the bank contest the applicability of the clauses to mortgagees. See *Broadview S. & L. Co.* v. *Buckeye Union Ins. Co.* (1982), 70 Ohio St. 2d 47, 24 O.O. 3d 109, 434 N.E. 2d 1092. The bank contends, however, that strict compliance with the provision may be excused if adherence would work an unjust result.

As authority for its proposed exception, the bank directs our attention to *Hounshell* v. *American States Ins. Co.* (1981), 67 Ohio St. 2d 427, 21 O.O. 3d 267, 424 N.E. 2d 311. The *Hounshell* syllabus provides:

"An insurance company may be held to have waived a limitation of action clause in a fire insurance policy by acts or declarations which evidence a recognition of liability, or acts or declarations which hold out a reasonable hope of adjustment and which acts or declarations occasion the delay by the insured in filing an action on the insurance contract until after the period of limitation has expired."

The issue of waiver in *Hounshell* arose when the insurer allegedly admitted its *pro rata* share of liability during settlement negotiations, thus inducing the insured's delay in filing an action. In the case at bar, the bank has delineated no such affirmative conduct on the part of the insurer.

One Ohio court has created a further exception to *Appel*. In *Shields* v. *State Farm Ins. Group* (1984), 16 Ohio App. 3d 19, 21, 16 OBR 20, 22, 474 N.E. 2d 334, 336, the Court of Appeals for the Twelfth Appellate District held

that if "death, incompetency, or other similar circumstances" cause an inability to comply with policy time limits, notice provisions may be tolled, within the limits of the applicable statute of limitations, and in the absence of undue prejudice to the insurer.

In *Shields,* the insured died shortly after his claim accrued and the administratrix filed an action after the specified one-year period had expired. The appellate court held that the limitation period should run from the date of the administratrix's appointment. However, in language we deem more pertinent to the facts of this case, the court rejected a proposed duty of the insurer to notify claimants, stating that "it is not the responsibility of the insuring company under the usual insurance contract provisions to seek out claimants. The burden is on [him] who has a claim to assert his claim." *Id.* at 20, 16 OBR at 20-21, 474 N.E. 2d at 335.

As additional authority, the bank cites several decisions from other states which restrict the enforceability of limitation clauses to situations where the insurer has provided a copy of the policy to the insured. Several courts have so held when the insurer's duty was imposed by statute, *e.g., Lombard* v. *Manchester Life Ins. Co.* (La. App. 1981), 406 So. 2d 742, or when the certificate provided to the insured was virtually identical in content to the policy provided to the mortgagee but lacked the limitations clause, *Homestead Investments, Inc.* v. *Foundation Reserve Ins. Co.* (1971), 83 N.M. 242, 490 P. 2d 959. Other courts have excused an insured's ignorance of a limitation provision by invoking equitable considerations which do not exist in this case. See, *e.g., Bowler* v. *Fid. & Cas. Co. of New York* (1969), 53 N.J. 313, 250 A. 2d 580 (insurer discontinued disability benefits after one hundred ninety-nine weeks under policy providing for lump sum award if disability persists at the end of two hundred weeks).

We do not believe the facts of this case demand an extension of *Hounshell.* The undisputed documentary evidence submitted by the parties shows that the bank's alleged ignorance is largely attributable to its internal business practices. As noted above, it was the bank's custom to request from the insurer only a certificate of insurance rather than a copy of the policy itself. The bank chose to guarantee its access to the actual policy through the Perisics, by the inclusion of the following provision in the mortgage agreement:

"5.   Hazard Insurance.

"All Insurance policies and renewals thereof shall be in [a] form acceptable to Lender and shall include a standard mortgage clause in favor of and in [a] form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower."

It should be emphasized that this is not a case where the mortgagee was unaware of its potential claim until the deadline had passed. The affidavit of Margie Bracken-Ruggaard demonstrates that the bank received a notice of cancellation (actually non-renewal) of the policy from the insurer on July 20, 1984, approximately seven months after the fire. Although the notice did not specify a reason for the cancellation, Bracken-Ruggaard stated that she contacted the Perisics two months later and was informed of the fire loss. The affidavit of Linda Cooper, a clerk in the bank's loan processing unit, ac-

knowledges that she received a telephone call in August 1984 from the insurer's investigator, who "volunteered information about a loss on the property." She directed him to the appropriate department. Lastly, a bank appraiser inspected the property in September or October 1984, confirmed the loss, and obtained the date of its occurrence.

Finally, the bank argues that the insurer should be required to show actual prejudice from the delay before invoking the limitation. The only authority cited for this proposition is *Zuckerman* v. *Transamerica Ins. Co.* (1982), 133 Ariz. 139, 650 P. 2d 441. In *Zuckerman* the court stated:

"* * *Where the conditions do no more than provide a trap for the unwary, the insurer will be estopped to raise them. We thereby grant the consumer his reasonable expectation that coverage will not be defeated by the existence of provisions which were not negotiated and in the ordinary case are unknown to the insured. * * *" *Id.* at 146, 650 P. 2d at 448.

We cannot accept a characterization of the bank as an unwary consumer. In the absence of any Ohio authority or compelling equitable considerations, we decline to impose the requirement of actual prejudice.

We hold, therefore, that the disputed question of the bank's notice of the one-year limitation was immaterial for the purposes of Civ. R. 56, and that the insurer was properly granted judgment as a matter of law in the bank's action on the contract. Appellant's first assignment of error is not well-taken.

In its second assignment of error, the bank contends the trial court erred in applying the one-year limitation to the bank's action in tort arising from the insurer's alleged bad faith in the dealings between the parties.

The duty of an insurer to act in good faith in settling its insured's claim was recognized in *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, 6 OBR 337, 452 N.E. 2d 1315. In paragraph one of the syllabus, the Supreme Court held:

"Based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer. * * *"

The Court, quoting *Slater* v. *Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, 21 O.O. 2d 420, 187 N.E. 2d 45, paragraph two of the syllabus, set forth the applicable standard:

" 'A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.' " *Hoskins, supra,* at 276, 6 OBR at 341, 452 N.E. 2d at 1320.

The court emphasized that a mere breach of contract will not give rise to an action in tort, regardless of the alleged tortfeasor's motive. *Id.; Ketcham* v. *Miller* (1922), 104 Ohio St. 372, 136 N.E. 145. Similarly, an insurer's refusal to pay a claim will not expose the insurer to tort liability if the refusal was reasonably justified under the circumstances. *Hoskins, supra,* at 276-277, 6 OBR at 341, 454 N.E. 2d at 1320; *Hart* v. *Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185, 39 O.O. 465, 87 N.E. 2d 347.

In applying the above precedent, we are mindful of the bank's position as a mortgagee rather than an insured *per se.* However, the standard mortgage clause created an independent

contract between the bank and the insurer, albeit generally subject to the terms and conditions of the policy, thus rendering the bank an insured. See 10A Couch on Insurance 2d (Rev. Ed. 1982), Sections 42:728, 42:730 and 42:731. We therefore hold that the duty prescribed in *Hoskins* is applicable to this case.

The bank's argument that it presented evidence demonstrating bad faith parallels the argument raised and rejected under the first assignment of error. The bank contends that the insurer's failure to supply a copy of the policy, or otherwise inform the bank of its potential claim and the limitations pitfall, created an advantage which the insurer tortiously exploited.

Although we have held that the insurer was under no contractual duty to supply the policy, we believe the issue is at least arguably relevant here. However, the insurer's alleged withholding of the policy, innocent in itself, would be relevant only if it was part of a course of conduct exhibiting bad faith. With the exception of the disputed issue, the bank's evidence of that alleged course of conduct is essentially undisputed.

As already noted, the bank received a notice of non-renewal on July 20, 1984, apparently the date of the insurer's first communication relating to the fire loss. The affidavit of Margie Bracken-Ruggaard states that neither she nor any employee under her supervision was notified by the insurer of the existence or nature of the loss and the bank's potential claim. The affidavit further states that during September and October 1984, Bracken-Ruggaard attempted to contact the insurance agency which sold the policy, allegedly an agent of the insurer, but, in her words, "there were no answers to my inquiries and my calls were not returned."

John Poulos, a law clerk in the bank's legal department, states in his affidavit that he telephoned the insurer on July 12, 1985 to obtain a copy of the policy. After several calls he was instructed to go to the insurer's office to receive the policy. He did so, but, when he arrived, he was told that the policies were not kept at that office. He was informed that a copy could be obtained from the insurance agency, but the insurance agent subsequently informed Poulos that the agency did not retain copies of the policies. Poulos then contacted a representative of the J. B. Oswald Company (whose affiliation with the insurer, if any, is not explained), but received only an insurance form and not a copy of the actual policy.

While evidencing a "runaround," the evidence recited does not approach the quantum necessary to satisfy the *Hoskins* standard. The bank presented virtually no evidence relating to the period of time within the one-year limitation, a time frame within which we believe the gist of the alleged tort would have occurred. Although the later conduct is relevant insofar as it relates to this time frame, see *Spadafore* v. *Blue Shield* (1985), 21 Ohio App. 3d 201, 204, 21 OBR 215, 217, 486 N.E. 2d 1201, 1204, we do not believe the totality of the evidence presented a triable issue as to a bad faith course of conduct by the insurer.

Even if we assume, *arguendo,* the insurer's bad faith, it is obvious the bank suffered no prejudice. The bank's own evidence establishes that its employees learned of the fire within the limitation period and had ample time to investigate and file suit.

Since we find no evidence of bad faith, we need not address the issue of punitive damages, which damages require a further showing of actual malice. *Hoskins, supra,* at paragraph two of the syllabus; *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, 183-184, 71 O.O. 2d 174, 176-177, 327

188

N.E. 2d 654, 658. However, we note the merit of the insurer's contention below that the bank's failure to pray for compensatory damages under the tort claim presented the impermissible possibility of recovery of punitive damages in the absence of actual damages. *Richard* v. *Hunter* (1949), 151 Ohio St. 185, 39 O.O. 24, 85 N.E. 2d 109; *Shimola* v. *Nationwide Ins. Co.* (1986), 25 Ohio St. 3d 84, 25 OBR 136, 495 N.E. 2d 391.

Although the bank's assigned error relates to the trial court's claimed application of the one-year bar, we find it unnecessary to address this or any other possible basis for the court's decision. For even if we were to presume this alleged error, the decision would be affirmed because it is correct for other reasons. *Butche* v. *Ohio Cas. Ins. Co.* (1962), 174 Ohio St. 144, 21 O.O. 2d 418, 187 N.E. 2d 20.

Accordingly, the appellant's second assignment of error is not well-taken and the judgment of the trial court is affirmed.

*Judgment affirmed.*

NAHRA, P.J., and JACKSON, J., concur.