Jack ESTES, d/b/a Estes Music Studio,
and Mavis Estes, Appellants,

v.

ALASKA INSURANCE GUARANTY
ASSOCIATION, Appellee.

No. S-2408.

Supreme Court of Alaska.

May 26, 1989.

Rehearing Denied June 30, 1989.

Meredith A. Ahearn, Hagans, Brown, Gibbs & Moran, Anchorage, for appellants.

Timothy M. Lynch, Lynch, Crosby & Sisson, Anchorage, for appellee.

Before MATTHEWS, C.J., and
RABINOWITZ, BURKE, COMPTON
and MOORE, JJ.

OPINION

COMPTON, Justice.

After fire destroyed his music store, Jack Estes filed a claim with his insurer, Union Indemnity Insurance Company of New York (Union Indemnity). Ten months later, Union Indemnity denied Estes' claim on a number of grounds. One year and seven days after Union Indemnity's denial of his claim, Estes filed suit against it.

When Union Indemnity became insolvent, the Alaska Insurance Guaranty Association (AIGA) assumed Union Indemnity's obligations on its policies. AIGA moved for summary judgment against Estes on the ground that Estes had failed to comply with a policy provision requiring any suit to be filed "within one year after the loss occurs." The trial court granted summary judgment. We reverse.

## I. FACTS AND PROCEEDINGS

Jack Estes operated a music store, Estes Music Studio, in Kenai, Alaska. On August 14, 1983, the store and its inventory were destroyed by fire. Soon after the fire, Estes submitted proof of loss to his insurer, Union Indemnity.

Union Indemnity completed its investigation of the loss in January 1984. On June 4, Union Indemnity denied Estes' claim on the grounds that Estes had concealed facts related to the loss, had failed to provide certain documents, and had caused the loss or increased the risk of loss.

Estes did not communicate further with Union Indemnity until March 25, 1985, when Estes' trial attorney, not of the firm that represented Estes during the investigation, wrote to Union Indemnity's attorney asking to be advised of Union Indemnity's position on the claim. There was no response to this letter, and on June 11, 1985, Estes filed a complaint against Union Indemnity. Default judgment was entered against Union Indemnity on October 24, 1985.

In July 1986 litigation in New York resulted in liquidation of Union Indemnity. Pursuant to the Alaska Insurance Guaranty Association Act, AS 21.80.010–.190, AIGA intervened and assumed Union Indemnity's obligations under the policy. The action was amended to substitute AIGA in place of Union Indemnity as the defendant. The default judgment was set aside, and Union Indemnity was dismissed from the action.

AIGA moved for summary judgment on the ground that Estes had failed to comply with a policy provision requiring any suit on the policy to be commenced "within one year after the loss occurs." The trial court granted the motion. Estes appeals.

## II. DISCUSSION

On appeal Estes contends that in order to bar his claim for failure to comply with the one-year limit on commencement of suit clause, AIGA must show that it or Union Indemnity was prejudiced by his failure to comply. He also contends that Union Indemnity's delay in processing his claim constitutes a waiver of the one-year time limit and, alternatively, that AIGA should be estopped from asserting the one-year time limit.

AIGA argues that waiver or estoppel arising from Union Indemnity's actions cannot be asserted against AIGA.

When reviewing a grant of summary judgment this court must determine whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Zeman v. Lufthansa German Air Lines*, 699 P.2d 1274, 1280 (Alaska 1985). The party moving for summary judgment has the burden of proving the absence of issues of material fact. *McGee Steel Co. v. State*, 723 P.2d 611, 615 (Alaska 1986). "The party opposing summary judgment is not required to show it will prevail at trial. But if the movant establishes prima facie that it is entitled to judgment as a matter of law, the party opposing summary judgment must demonstrate that there exists a genuine issue of material fact to be litigated." *Wassink v. Hawkins*, 763 P.2d 971, 973 (Alaska 1988).

### A. AN INSURANCE COMPANY SEEKING TO ENFORCE A CONTRACTUAL MODIFICATION OF THE STATUTE OF LIMITATIONS MUST DEMONSTRATE THAT IT HAS SUFFERED PREJUDICE AS A RESULT OF THE CLAIMANT'S DELAY IN BRINGING SUIT.

 The multi-peril policy issued to Estes by Union Indemnity includes a five-page list of conditions and definitions. At the bottom of the list's second page, under

the heading "Conditions Applicable to Section I," there appears the following provision:

15. *Suit.* No suit shall be brought on this policy unless the insured has complied with all the policy provisions and has commenced the suit within one year after the loss occurs.

Estes concedes that his suit was not commenced within one year after the loss occurred. But he contends that the limitation provision should be enforced only upon proof by AIGA that AIGA has suffered prejudice as a result of his failure to file suit within the period. Though we have not held heretofore that such proof is required, Estes argues that the reasoning of prior cases supports such a requirement.

AIGA argued successfully before the trial court that the court should enforce the contractual modification of the statute of limitations without regard to any question of prejudice.

This court and others have recognized that insurance policies differ from traditional private contracts. *See Weaver Bros. v. Chappel,* 684 P.2d 123, 125 (Alaska 1984); *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193, 196 (1977). "An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured." *Id.* An insured is charged with knowledge of these conditions not because he has read or understood them, but because business utility so demands. *Cooper v. Government Employees Ins. Co.,* 51 N.J. 86, 237 A.2d 870, 873 (1968).

One commentator aptly characterizes conditions to an insurance policy as an exercise of "private lawmaking" by the insurance company. Oldfather, *Toward a Usable Method of Judicial Review of the Adhesion Contractor's Lawmaking,* 16 U.Kan.L.Rev. 303 (1968). Oldfather argues that to enforce such provisions uncritically is, in effect, to sanction arbitrary lawmaking. He suggests that courts should adopt some uniform method for reviewing such provisions.

In *Weaver Bros. v. Chappel,* 684 P.2d 123 (Alaska 1984), we reviewed a policy provision requiring prompt notice of loss. We stated:

In short, the notice requirement is designed to protect the insurer from prejudice. *In the absence of prejudice,* regardless of the reasons for the delayed notice, *there is no justification for excusing the insurer from its obligations under the policy.* We recognize the strong societal interest in preserving insurance coverage for accident victims so long as the preservation is equitable for all parties involved.

*Id.* at 125 (emphasis added).

In *Weaver Bros.,* we reviewed the notice provision under the following standard: Does the application of the notice provision in this case advance the purpose for which it was included in the policy? The question we must now consider is whether the standard adopted in *Weaver Bros.* should be applied to policy clauses that are similar to notice provisions.

A number of courts have adopted the *Weaver Bros.* approach to notice provisions. Of these, some have extended that approach to other policy clauses. *See Zuckerman v. Transamerica Ins. Co.,* 133 Ariz. 139, 650 P.2d 441 (1982); *ACF Produce v. Chubb/Pacific Indem. Group,* 451 F.Supp. 1095 (E.D.Pa.1978) (applying Pennsylvania law). Others have chosen not to do so. *See Simms v. Allstate Ins. Co.,* 27 Wash.App. 872, 621 P.2d 155 (1980); *Donahue v. Hartford Fire Ins. Co.,* 110 R.I. 603, 295 A.2d 693 (1972).

The Washington Court of Appeals held in *Washington Insurance Guaranty Association v. Hill,* 19 Wash.App. 195, 574 P.2d 405 (1978), that a showing of prejudice is required before an insurance company may enforce a provision requiring prompt notice of loss. In *Simms v. Allstate,* the same court held that a showing of prejudice is not required for enforcement of a one-year time limit on a commencement of suit clause. The court compared notice provisions with time limit on commencement of suit clauses: "The purpose of the former is to avoid prejudice; the latter is simply a contractual modification of the statute of limitations." 621 P.2d at 158. Though the

court apparently considered this distinction significant, it is not clear that there is any distinction at all. The primary purpose of contractual modifications of the statute of limitations is to avoid prejudice, specifically, to avoid the extra danger of fraud and mistake associated with stale claims. *See Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223, 226 (Alaska 1973). Further, prejudice resulting from delay in filing suit seems no more difficult to prove than prejudice resulting from delay in providing notice. If the insurance company could show, for example, that witnesses had died or their memories faded during the insured's delay in filing suit, or that other evidence had been lost, enforcement of the contractual time limit on commencement of suit might be appropriate.[1]

The court in *Simms* also opined that to apply the prejudice requirement to limits on action would be "to permit an insured, once he has purchased his policy, to file it away and forget it, and then defend his neglect to commence suit within the stipulated period on the ground that the insurer was not prejudiced thereby." 621 P.2d at 158 (quoting *Donahue*, 295 A.2d at 694). This opinion is defensible, but is not relevant to the enforceability of a clause not bargained for. The court's use of the term "stipulated period" is misleading. The contractual modification of the statute of limitations is not bargained for, nor is it knowingly agreed to by the insured. Courts have hesitated to enforce policy conditions not because the conditions are difficult to discover, but because the conditions are not the result of a bargain. *See Weaver Bros.*, 684 P.2d at 125; *Zuckerman*, 650 P.2d at 448. It is the element of bargain which

justifies a court in uncritically enforcing the terms of a contract provision; when the element of bargain is not present, the authority of the "stipulated" provision becomes problematic. The mere fact that a provision may be discovered after the fact does not make the authority unproblematic.

In *Zuckerman v. Transamerica Insurance Co.*, 650 P.2d at 448, the Arizona Supreme Court held that a contractual modification of the statute of limitations should be enforced only "when the reasons for its existence are thereby served." When enforcement does not serve the reasons for the provision's inclusion in the policy, the insured's reasonable expectation that coverage will not be arbitrarily denied must be given effect. *Id.* In short, the authority of the provision is limited by the reality of the way insurance policies are bought and sold; the effect of the provision is limited by the reasonable expectations of the insured.

We hold that time limit on commencement of suit clauses, notice of loss clauses, proof of loss clauses, and cooperation clauses should all be reviewed on the basis of whether their application in a particular case advances the purpose for which they were included in the policy. Only by so reviewing these clauses can courts satisfy the consumer's reasonable expectation that coverage will not be defeated on arbitrary procedural grounds.[2] Thus, in order to bar Estes' claim for failure to comply with the one-year time limit, AIGA must establish that it suffered as a result of his delay such prejudice as the limit was intended to avoid.[3] Hence, summary judgment was im-

---

**1.** We also note that insurance companies are not forced to stand by helplessly as memories fade and physical evidence is lost. They are entitled to bring declaratory judgment actions to determine coverage at their own convenience. *See* AS 22.10.020.

**2.** The dissent urges the court to declare a public policy in favor of a one-year period of limitation. The task of declaring public policy rests first with the legislature. AS 9.10.050 provides in part: "No person may bring an action ... upon a contract or liability, express or implied, ... unless commenced within six years." Presumably if a one-year period of limitation was

in the public interest, the legislature would enact a one-year statute of limitations.

**3.** The dissent observes that the rule we adopt today has been rejected by an "overwhelming majority" of those courts on which it has been urged. Six of the eight decisions included by the dissent in this majority arose in jurisdictions in which the limitation clause had been legislatively or administratively approved. *See Zieba v. Middlesex Mut. Assur. Co.*, 549 F.Supp. 1318, 1322 (D.Conn.1982) (Conn.Gen.Stat. § 38–98, –99); *Schreiber v. Pennsylvania Lumberman's Mut. Ins. Co.*, 498 Pa. 21, 444 A.2d 647 (1982) (Pa.Stat.Ann. tit. 40 § 636); *Petraglia v. Ameri-*

proper, and the judgment of the superior court must be reversed.

## B. ESTES DID NOT RAISE A GENUINE ISSUE OF MATERIAL FACT WITH RESPECT TO THE ISSUES OF WAIVER AND ESTOPPEL.

In response to AIGA's motion for summary judgment, Estes argued that: (a) Union Indemnity had waived the policy's one-year time limit by its failure to act on Estes' claim within 30 days,[4] or by its ten-month delay in denying his claim; (b) Union Indemnity's failure to act on Estes' claim within 30 days constituted a breach of contract, relieving Estes of any obligations to file suit within one year; and (c) Union Indemnity's ten-month delay in denying his claim estopped it from asserting the one-year time limit.

■ At the outset we note that the 30–day provision found in section I.13 does not delimit the time within which Union Indemnity must accept or reject a claim. Rather, on its face it specifies only the time within which it must pay an accepted claim. Estes has cited no authority suggesting a different construction of this provision, nor do we perceive any. Thus we conclude that Estes' arguments based upon Union Indemnity's failure to act on his claim within 30 days are without merit.

■ The trial court rejected the application of waiver and estoppel to the case, relying on this court's decision in *Fireman's Fund v. Sand Lake Lounge, Inc.,* 514 P.2d 223 (Alaska 1973). In *Fireman's Fund,* this court interpreted a policy provision similar to the one here at issue; we held that the policy's one-year period began to run only after the claim was denied. *Id.* at 226.

The trial court reasoned that the limitation period in this case began to run only after the claim was denied, and therefore delay prior to denial of the claim could not give rise to a claim of waiver or estoppel. Estes accepts the decision in *Fireman's Fund* as identifying the date from which the one-year period commences to run.

In order to prevail at trial on the issue of waiver, Estes would have to establish that Union Indemnity's conduct was inconsistent with an intent to insist on compliance with the one-year limit on commencement of suit clause. *See Milne v. Anderson,* 576 P.2d 109, 112 (Alaska 1978)[5]; *Village of Lake in the Hills v. Illinois Emcasco Ins. Co.,* 153 Ill.App.3d 815, 106 Ill.Dec. 881, 506 N.E.2d 681 (1987). In order to prevail at trial on the issue of estoppel, Estes would have to establish that (1) Union Indemnity asserted by conduct or words that it would not insist on compliance with the clause, and (2) Estes relied to his detriment

can Motorists Ins. Co., 284 Pa.Super. 1, 424 A.2d 1360 (1981) (Pa.Stat.Ann. tit. 40 § 636); *Sanchez v. Kemper Ins. Companies,* 96 N.M. 466, 632 P.2d 343 (1981) (N.M.Stat.Ann. § 59–16–16); *Donahue v. Hartford Fire Ins. Co.,* 110 R.I. 603, 295 A.2d 693 (1972) (R.I.Gen.Laws § 27–5–3); *Simms v. Allstate Ins. Co.,* 27 Wash.App. 872, 621 P.2d 155 (1980) (WAC 284–20–010). Another of the decisions rejected application of *Zuckerman* only on the ground that the insured in the case was not "an unwary customer." *Ameritrust Co. Nat'l Ass'n v. West American Ins. Co.,* 37 Ohio App.3d 182, 525 N.E.2d 491, 494 (1987).

4. Under "Conditions Applicable to Section I" of Estes' insurance policy, § 13 provides: "Payment of Loss. The company will pay all adjusted claims within thirty (30) days after presentation and acceptance of the proof of loss."

5. In *Milne* we stated:
Waiver is generally defined as "the intentional relinquishment of a known right." However, waiver is:

a flexible word, with no definite, and rigid meaning in the law.... While the term has various meanings dependent upon the context, it is, nevertheless, capable of taking on a very definite meaning from the context in which it appears, and each case must be decided on the facts peculiar to it.

A waiver can be accomplished either expressly or implicitly. An implied waiver arises where the course of conduct pursued evidences an intention to waive a right, or is inconsistent with any other intention than a waiver, or where neglect to insist upon the right results in prejudice to another party. To prove an implied waiver of a legal right, there must be direct, unequivocal conduct indicating a purpose to abandon or waive the legal right, or acts amounting to an estoppel by the party whose conduct is to be construed as a waiver.

576 P.2d at 112 (citations and footnotes omitted).

on that assertion. *See Merdes v. Underwood,* 742 P.2d 245, 248 (Alaska 1987).

This court's decision in *Fireman's Fund* is dispositive of the issue of when the one-year period began to run. The clause in Estes' policy provides: "No suit shall be brought on this policy unless the insured ... has commenced suit within one year after the loss occurs." Thus, the one-year period began to run on the day Union Indemnity denied the claim. Estes had a full year thereafter to file suit. The mere delay caused by investigation of the claim is not conduct suggesting that Union Indemnity would not insist on compliance with the one-year limit on commencement of suit clause. Further, no statement of genuine issue asserting detrimental reliance special to Estes was filed. Estes' estoppel defense was correctly rejected.

■ In addition to Union Indemnity's failure to deny the claim for a period of ten months, its attorney acknowledged the unusual nature of the delay in a letter written five months after the fire: "It is my understanding that our time for responding to your client's Proof of Loss continues to be held in abeyance until we have had a chance to complete the work with the accountant and Mr. Parker and a brief and reasonable time to analyze the same." Further, the attorney for Union Indemnity failed to respond to an inquiry from Estes' trial attorney after he had advised Estes' prior attorney that the claim was rejected and denied. Estes argues that these actions, taken together, show that Union Indemnity was acting in a manner inconsistent with an intent to insist on compliance with the one-year limit on commencement of suit clause, thereby waiving it.

We conclude that this argument does not raise a triable issue of waiver. It would be unreasonable to say that Union Indemnity's conduct was inconsistent with an intent to insist on compliance with the one-year limit clause.

Estes has not raised triable issues with respect to waiver and estoppel.[6] The trial court correctly rejected these proffered defenses to Union Indemnity's motion for summary judgment.

## II. CONCLUSION

Like a notice of loss provision, a limitation on commencement of suit clause should be enforced only when its application in a particular case serves the primary purpose for which it was included in the policy: to avoid prejudice. To avail itself of the contractual one-year limit on commencement of suit clause, AIGA must establish that it was prejudiced by Estes' delay in filing suit.

The judgment of the superior court rejecting Estes' claims of waiver and estoppel is AFFIRMED. Its grant of summary judgment is REVERSED and the case REMANDED for proceedings consistent with this opinion.

MOORE, J., dissents.

MOORE, Justice, dissenting.

I dissent from the majority opinion. The majority rewrites a patently clear clause which has been approved by the legislature, and which has been universally used and enforced in fire insurance policies since 1943. The court's analysis is logically and legally flawed. It unnecessarily creates great uncertainty and ignores precedent of our earlier Alaska Supreme Court decisions, as well as the vast majority of other jurisdictions that have decided this same issue.

On August 14, 1983, Estes Music Studio was destroyed by fire. The fire marshal investigating the fire observed that the fire had two points of origin, so he suspected arson. After investigating the claim, the Estes' insurance company denied the Estes' claim, on the ground that the Estes allegedly caused the fire and made several misrepresentations in connection with the claim.

---

6. We do not reach AIGA's argument that it may not be held liable where an insurance claim against an insolvent insurer depends for its validity on theories of estoppel or waiver. Also, we find AIGA's "covered claims" argument without merit.

The Estes' fire insurance policy contains a clause which states that "no suit shall be brought on this policy unless the insured has complied with all the policy provisions and has commenced the suit within one year after the loss occurs." The Estes filed suit one year and seven days after the denial of their claim.[1] The trial court granted summary judgment for the defendant.

Reversing, the majority holds that the "time limit on commencement of suit clauses, notice of loss clauses, proof of loss clauses, and cooperation clauses should all be reviewed on the basis of whether their application in a particular case advances the purpose for which they were included in the policy." Majority opinion at 1318. The majority concludes that the time limit clause was inserted to prevent prejudice to the insurer, so the insurer is required to show prejudice from the insured's delay in filing suit before the insurer may rely on the contractual suit limitation clause.

The majority relies heavily on *Zuckerman v. Transamerica Ins. Co.*, 133 Ariz. 139, 650 P.2d 441 (1982). In *Zuckerman*, the insurer admitted liability and had agreed to pay the least of three estimates, but later refused to pay when the insured stated he would not use the funds to rebuild the damaged property. The claimant sued to recover the amount of the lowest estimate, at which point the insurer raised the 12–month suit limitation as a defense. The court held that

> The insurer may be *estopped* from raising a defense based upon such an adhesive clause where the enforcement of the clause would work an unjust forfeiture. The key factor in the determination of this issue is the question of

whether the insurer has shown prejudice by reason of the delay in filing suit. In the absence of such a showing, it is fair to say that the purpose for which the insurer was given permission to insert the clause will not be served by its enforcement.

650 P.2d at 448 (emphasis added). *Zuckerman* relied substantially on *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193 (1977), which required an insurer to show prejudice from delay before it could deny coverage on *the basis of an insured's failure to give prompt notice of claim.*

The majority opinion here does more violence to the clear meaning of this contractual suit limitation clause than any other case in the country to date, excluding those states where such clauses are statutorily prohibited. *Zuckerman*, the only other case to require a showing of prejudice in this context (*but see* n. 3, *infra*), was couched in terms of an estoppel. The majority today, by contrast, announces a rigid rule of law.

The majority has not done its research. It ignores the cases which discuss the public policies served by the suit limitation clause. The majority thus fails to distinguish the suit limitation clause from those clauses designed to protect the insurer from prejudice. A holding of this importance deserves a more thorough analysis.

Prompt notice of claim clauses in insurance policies are designed to avoid prejudice to an insurer in its investigation of accidents. *Brakeman*, the leading case, has been widely adopted and appears to express the emerging majority rule.[2]

Suit limitation clauses, by contrast, serve important public policies. Excluding one short-lived Federal District Court case,[3] no

---

1. In a "masterpiece of judicial prestidigitation," this court held, in *Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223 (Alaska 1973), that an insured may sue one year from the date the insurer denies liability rather than one year from the date of the fire. (Characterization from Reader and Polk, *The One-Year Suit Limitation in Fire Insurance Policies: Challenges and Counterpunches*, 19 *Forum* 24, 35 (1983) (hereafter "Reader and Polk")).

2. *See, e.g., Weaver Bros. v. Chappel*, 684 P.2d 123 (Alaska 1984); *Aetna Cas. and Sur. Co. v. Murphy*, 206 Conn. 409, 538 A.2d 219 (1988); *Travelers Ins. Co. v. Feld Car & Truck Leasing Corp.*, 517 F.Supp. 1132 (D.Kansas 1981); Annotation, *Liability Insurance: Clause With Respect to Notice of Accident or Claim, etc., or With Respect to Forwarding Suit Papers*, 18 A.L.R.2d 443, §§ 24–26 (1951).

3. A federal district court in Pennsylvania preceded *Zuckerman v. Transamerica Ins. Co.*, 133

court outside Arizona has required an insurer to show prejudice before relying on the contractual suit limitation clause. Eight courts have expressly refused to require such a showing. *See Ameritrust Co. Nat'l. Ass'n. v. West Am. Ins. Co.*, 37 Ohio App.3d 182, 525 N.E.2d 491 (1987); *Zieba v. Middlesex Mut. Assur. Co.*, 549 F.Supp. 1318 (D.Conn.1982); *Schreiber v. Pennsylvania Lumberman's Mut. Ins. Co.*, 498 Pa. 21, 444 A.2d 647 (1982); *Sanchez v. Kemper Ins. Companies*, 96 N.M. 466, 632 P.2d 343 (1981); *Petraglia v. American Motorists Ins. Co.*, 284 Pa.Super. 1, 424 A.2d 1360 (1981); *Simms v. Allstate Ins. Co.*, 27 Wash.App. 872, 621 P.2d 155 (1980); *Brandywine One Hundred Corp. v. Hartford Fire Ins. Co.*, 405 F.Supp. 147 (D.Del. 1975); *Donahue v. Hartford Fire Ins. Co.*, 110 R.I. 603, 295 A.2d 693 (1972). These courts have all recognized the validity of these clauses and the public policies they serve.

A failure to abide by the limitation of action condition in a policy stands on a much different footing than a non-compliance with the notice provisions.... [T]he main purpose underlying the notice stipulations is to safeguard the insurer from prejudice in processing a claim. Therefore, where an insurer's interests have not been harmed by a late notice, the reason for the notice condition is lacking. By contrast, limitation periods on suits are designed to promote justice by preventing surprises through revival of stale claims, to protect defendants and courts from handling matters in which the search for truth may be impaired by loss of evidence, to encourage plaintiffs to use reasonable and proper diligence in enforcing their rights, and to prevent fraud. The presence or absence of prejudice is not, nor should it be, a factor in deciding whether an insurer may effec-

tively assert this defense under the policy.

*Zieba*, 549 F.Supp. at 1321 (citations omitted).

[T]he purpose of the notice requirement in a policy is the avoidance of prejudice to an insurer in handling a claim due to lapse of time. For this reason the failure of an insured to give notice will be recognized as a defense only if the insurer is actually prejudiced thereby. By contrast, the purpose of a policy limitation on suit is not to avoid prejudice to an insurer [but rather] so that files may be closed at a definite date, uncertainty as to the amount of an insurer's liability avoided, and stale claims cut off.... [P]rejudice from delay in filing suit is not a "paramount" concern.... It is, therefore, unlikely that a Delaware Court would require an insurer to prove prejudice before effectively asserting as a defense the delay by an insure[d] in instituting an action beyond the time limitation of the policy.

... The purpose of the [notice requirement] is to avoid prejudice; the [suit limitation] is simply a contractual modification of the statute of limitations.

*Brandywine*, 405 F.Supp. at 151. The Rhode Island Supreme Court, by requiring an insurer to show prejudice before asserting a failure to give notice of a claim,[4] "never intended ... to permit an insured, once he had purchased his policy, to file it away and forget it, and then defend his neglect to commence suit within the stipulated period on the ground that the insurer was not prejudiced thereby." *Donahue*, 295 A.2d at 694. *See also Simms*, 621 P.2d at 157–58 (following *Brandywine* and *Donahue*). The Pennsylvania Supreme Court, declining to extend *Brakeman*'s prejudice requirement to suit limitation clauses, stated that

Ariz. 139, 650 P.2d 441 (1982). *ACF Produce, Inc. v. Chubb/Pacific Indem. Group*, 451 F.Supp. 1095, 1098 (E.D.Pa.1978) ("[N]either insurer may avail itself of the limitation of suit clause absent a showing of prejudice"). The Pennsylvania Supreme Court, in *Schreiber v. Pennsylvania Lumberman's Mut. Ins. Co.*, 498 Pa. 21, 444

A.2d 647 (1982), rejected the holding of the district court and held that no showing of prejudice is required before an insurer may rely on the suit limitation clause.

4. *Pickering v. American Employers Ins. Co.*, 109 R.I. 143, 282 A.2d 584 (1971).

In contrast, the limitation of suit provision in appellants' fire insurance policy was not "dictated by the insurance company to the insured." [quoting *Brakeman*] Rather, the Legislature has mandated that every policy of fire insurance ... shall contain the [12 month suit limitation] proviso.... Such a statutory requirement can hardly be termed a "contract of adhesion," imposed unfairly by the stronger party upon the weaker. Rather, it represents a legislative determination of a reasonable period within which suits must be brought, a careful balancing of the interests of both insurers and insureds. The validity of this statutorily mandated limitation of suit provision has been consistently upheld.

*Schreiber*, 444 A.2d at 649. *See also Petraglia*, 424 A.2d at 1364 (preceding *Schreiber* in declining to extend *Brakeman* to "statutorily approved" suit limitation clause). The Supreme Court of New Mexico has stated that

> Reasons for allowing such [suit limitation] provisions to stand include public interest in prompt assertion of legal claims, and the possibility of fraudulent claims arising if a long period is allowed between the occurrence and the initiation of a legal claim.
>
> [Other reasons, mentioned in *Brandywine*, are that] such a limitation allows an insurer to avoid uncertainty as to the amount of its liability. Certainly, it could be very burdensome for an insurer to be uncertain of its liability for an indefinite period into the future. Second, such a contractual provision allows stale claims to be cut off.

*Sanchez*, 632 P.2d at 344 (citations omitted).[5] The court concluded that "time-to-sue provisions advance public policy considerations not present in cooperation provisions. Furthermore, the purpose of a time-to-sue provision is not necessarily fear of prejudice to the insured." The court thus held that "the insurer ... need not show that it was prejudiced by violation of the provision." *Id.* at 345. The Ohio Court of Appeals declined to follow *Zuckerman* "[i]n the absence of any Ohio authority or compelling equitable considerations." The court's holding was based in part on its conclusion that the insured bank was not "an unwary customer." *Ameritrust*, 525 N.E.2d at 494.[6]

Of the cases on point, eight have not required a showing of prejudice and two have. Of the two that did, one was overruled by the highest court of that jurisdiction (*ACF Produce, Inc. v. Chubb/Pacific Indem. Group*, 451 F.Supp. 1095 (E.D.Pa. 1978), overruled in *Schreiber*) and the other, *Zuckerman*, had attracted no following in seven years, until today.

It is well known among the insurance industry and the insurance defense bar that legitimate claims are timely filed in all but the most egregious instances, while fraudulent claims are benefitted much more by delay and late filings. This is due to the fading of witness' memories, the loss or disappearance of material evidence, and the death or unavailability of witnesses which accompany the passage of time. Fraudulent claimants are also hesitant to expose themselves to criminal prosecution which may result from the use of discovery pursuant to Alaska Rules of Civil Procedure. By effectively repealing this clause,[7]

---

**5.** This court has recognized the "greater necessity for certainty required for ascertaining rates to be paid for policies." *Day v. A & G Constr. Co., Inc.*, 528 P.2d 440, 444 (Alaska 1974). *See also INA Life Ins. Co. v. Brundin*, 533 P.2d 236, 241 (Alaska 1975).

**6.** *See also Centennial Ins. Co. v. Dowd's Inc.*, 306 A.2d 648, 651 (D.C.1973) ("The possibility of fraudulent claims regrettably looms ever-present in the realities of the insurance industry.... [W]e see no basis for our invalidating such a contractual [suit limitation] provision;" court rejects argument that clause is "contrary to public policy."); *Webb v. Kentucky Farm Bur.*

*Ins. Co.*, 577 S.W.2d 17, 18 (Ky.App.1978) ("[A] statutory provision which allows an insurer to limit an action against it certainly indicates that the public policy of Kentucky favors such limitations.").

**7.** *See Zuckerman*, 133 Ariz. at 147, 650 P.2d at 449 (Holohan, C.J., dissenting):

> The court's decision today, for all practical purposes, frustrates the legislative policy by eliminating the shorter period of limitation in the insurance contract. The new clause written for the parties by the majority translates into a statement that the one-year limitation

the majority effectively negates prompt resolution of suspect fire claims which, in my opinion, is contrary to sound public policy reasons for enforcement of the one-year suit limitation clause.

The clause in question is also in the public interest because it helps reduce overall insurance rates. The discussion of notice of claim clauses in Justice Pomeroy's *Brakeman* dissent also applies to suit limitation clauses:

> The interests of insureds generally and the public interest may also be served in some instances in which the requirement of prompt notice is a disadvantage to the insured in the instant case. Under any type of insurance, early investigation reduces the risk of successful fraudulent claims. This is a disadvantage to the specific claimant, who often is also the insured, but it is a disadvantage fully supportable in the public interest.
>
> ... [Clauses that] require timely presentment of claims ... reduce the overall cost of the coverage below what it would be in the absence of such provisions.... [Also], they reduce the burden of providing reserves for undetermined claims by reducing the period and degree of uncertainty concerning the

number of claims ... and their amounts ... R. Keeton, Insurance Law—Basic Text, § 7.2(a) at 445–46 (1972) (footnotes omitted).

*Brakeman,* 371 A.2d at 205 (Pomeroy, J., dissenting).

Contractual limitation clauses, in the absence of statutes prohibiting them, have been upheld in the overwhelming majority of cases.[8] The critical inquiry is whether the time limitation affords the insured a reasonable amount of time to file suit once liability has been denied.[9] The 12–month period in question has been in common use since 1943, when codified by the New York legislature.[10] The period of one year from the date of fire has been uniformly upheld as reasonable.[11] Alaskans already have much longer than one year on the basis of *Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.,* 514 P.2d 223 (Alaska 1973) (*see* n. 1).

Many states' legislatures have mandated that fire insurance policies contain the 12–month limitation on suit,[12] in furtherance of the public policies discussed above. Other states merely allow the clauses.[13] A small minority of states expressly prohibit such clauses.[14]

---

will not be enforced if a court thinks that the enforcement of the period of limitation would be unjust. This standard, or non-standard, is advanced by the court as a "rule consistent with the modern day business methods of the insurance industry."

The present decision destroys what I view as the public policy of this state. The rule fashioned today so severely limits the legislative-approved limitation clause that it virtually repeals it.

The majority's holding guarantees that, for at least a few years, this court will be involved in deciding when a suit limitation clause served the "purpose" for which it was inserted. This involves no less than a full trial and resulting review on the merits. If the clause cannot be applied until after a trial on the merits, it certainly will not have barred the suit. The clause is literally read out of the contract.

**8.** *See, e.g., Austin v. Fulton Ins. Co.,* 444 P.2d 536 (Alaska 1968); *Johnson v. Phoenix Assur. Co. of New York,* 70 Wash.2d 726, 425 P.2d 1 (1967); *Gibbons v. Badger Mut. Ins. Co.,* 11 Ariz.App. 485, 466 P.2d 36 (1970); Annotation, *Validity of Contractual Time Period, Shorter Than Statute of Limitations, for Bringing Action,* 6 A.L.R.3d

1197, § 4a (1966); Reader and Polk, 19 *Forum* at 25 n. 8; 20A J. Appleman, *Insurance Law and Practice* § 11601 (1962); 13A *Couch on Insurance* § 75:71 (2nd ed. 1968); 51 Am.Jur.2d *Limitation of Actions* § 64 (1970).

**9.** *See Midwest Triangle Paint Works, Inc. v. Firemen's Ins. Co.,* 36 Ill.App.2d 65, 183 N.E.2d 562, 565 (1962) (five to six weeks after rejection of claim "was adequate," suit filed one year and seven days after fire held barred).

**10.** *See Sand Lake Lounge,* 514 P.2d at 225; *Simms v. Allstate Ins. Co.,* 27 Wash.App. 872, 621 P.2d 155, 156 (1980); Reader and Polk, 19 *Forum* at 24.

**11.** *See* Annotation, *supra* note 8, 6 A.L.R.3d 1197 § 4(a).

**12.** *See* Reader and Polk, 19 *Forum* at 25 n. 9.

**13.** *See* Reader and Polk, 19 *Forum* at 26–27.

**14.** Arkansas and South Dakota are two examples. *See* Reader and Polk, 19 *Forum* at 26 nn. 14, 15.

Like Arizona, Alaska has merely allowed such clauses.[15] However, Alaskan courts have consistently enforced the 12–month clause since at least 1954. *See Sauer v. Law, Union & Rock Ins. Co.*, 17 F.R.D. 430, 431 (D.Alaska 1954) ("It is well established that a contractual limitation in insurance policies requiring suit to be brought within a prescribed period of time is, in the absence of statutory provisions to the contrary, valid, if reasonable."); *Austin v. Fulton Ins. Co.*, 444 P.2d 536, 538 (Alaska 1968) ("[A]ppellant ... is barred by the twelve-month period of limitation from asserting his claim"; finding "no facts which would create an estoppel as to the twelve-month limitation provision"); *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 319 (9th Cir.1969) (Plaintiff's "right to sue is governed by the terms of the policy, one of which is the express limitation provision requiring any suit to be brought 'within 12 months next after the inception of the loss'"; suit "was not timely."); *Dischner v. New Hampshire Ins. Co.*, 324 F.Supp. 89, 91 (D. Alaska 1971) ("Plaintiff timely filed this action within 12 months after the sixty (60) days loss payable period had expired, and thus plaintiff's action is not barred."); *Sand Lake Lounge*, 514 P.2d at 227 ("[T]he minimum period of limitation to which the parties could agree would be one year from" the date coverage was denied).

The majority clearly mistakes the fundamental purpose of the suit limitation clause and blithely exorcises it out of the insurance contract. In so doing, the majority inexplicably disregards and seriously hampers important public policy reasons for enforcement of the suit limitation clause based upon 35 years of consistent precedent followed by the vast majority of jurisdictions. Why? No notice problems are involved. No ambiguity exists in the suit clause requirement. No unfairness is demonstrated since the insured had 22 months and 7 days after the date of the fire to file a suit against the insurance company. This 1943 fire insurance form has been approved by the insurance commissioner and, implicitly by the legislature. The insured was represented by counsel.

The majority's decision is especially disturbing in light of the availability of waiver, estoppel, and tolling of the limitations period when the circumstances of a particular case would warrant such an application. These tools are frequently used to avoid the harshness of the clause in meritorious cases.[16] *Zuckerman* was in fact couched in terms of estoppel, and rightly so, given its facts.[17]

The clause in question is clearly worded and unambiguous. Rather than enforce it as written, the court chooses to discern the "purpose for which [it was] included in the policy." Majority Op. at 1318. The wisdom of this 'modern' analysis aside,[18] I submit that the clause in question passes the proposed standard. Enforcement of the clause in this case serves the purpose for which it was inserted: the prevention of stale and fraudulent claims. The insured's reasonable expectations are not de-

---

15. *See Sand Lake Lounge*, 514 P.2d at 225–26 & n. 4; AS 21.03.040; *but cf. Dischner v. New Hampshire Ins. Co.*, 324 F.Supp. 89, 91 (D.Alaska 1971) ("Alaska does not have a statute which prescribes provisions for fire insurance policies.")

16. On estoppel and waiver, *see Austin*, 444 P.2d at 538; *Zieba*, 549 F.Supp. at 1322–23; *Schreiber*, 444 A.2d at 649; *Brandywine*, 405 F.Supp. at 151–53; *Florsheim v. Travelers Indem. Co. of Illinois*, 75 Ill.App.3d 298, 30 Ill.Dec. 876, 393 N.E.2d 1223, 1228–31 (1979); Reader and Polk, 19 *Forum* at 37–45. On tolling, *see Peloso v. Hartford Fire Ins. Co.*, 56 N.J. 514, 267 A.2d 498, 500–02 (1970); Reader and Polk, 19 *Forum* at 35–36.

17. *See* Annotation, *Insurer's Failure to Pay Amount of Admitted Liability as Precluding Reliance on Statute of Limitations*, 41 A.L.R.3d 1111 (1972); 44 Am.Jur.2d *Insurance* § 1915 (1982); *Lee v. Safeco Ins. Co.*, 144 Ga.App. 519, 241 S.E.2d 627 (1978).

18. *See Brakeman*, 371 A.2d at 204 ("While some courts have chosen to reject traditional contract principles in interpreting insurance policies, I perceive no reason to do so in wholesale fashion."); *Petraglia*, 424 A.2d at 1364. ("[C]ourts should be reluctant to overrule such wellsettled principles where to do so would vitiate a legislatively approved provision of a standard fire insurance policy.").

feated, for the clause is clearly worded and unambiguous.[19] It is preposterous to attempt to interpret any contract with the assumption that it is reasonable for a party not to read it.[20]

Finally, the insured here was represented by competent counsel, as will be most persons whose claims have been denied. The leniency appropriate in the notice of claims context, where no attorney has normally been consulted, is inappropriate where counsel is present.[21] The clause in question would put even incompetent attorneys on clear notice of the impending deadline. If counsel fails to file suit in time; a plaintiff with a meritorious claim should be able to recover via a malpractice suit.

In sum, requiring an insurer to show prejudice before relying on the enforcement of the suit limitation clause is simply

bad law.[22] Such a result is misguided, misdirected and inappropriate.[23]

---

**19.** *See Ashburn v. SAFECO Ins. Co. of Am.,* 42 Wash.App. 692, 713 P.2d 742 (1986) ("[T]he unambiguous contract provision limiting the right of action on the Ashburn contract does not frustrate the reasonable expectation of the insured and the purpose of the contract."). *See also Insurance Co. of N. Am. v. State Farm Mut. Auto Ins. Co.,* 663 P.2d 953, 955 (Alaska 1983) ("Where an insurance company limits the coverage of a policy issued by it in plain language, this court recognizes that restriction."); *Werley v. United Serv. Auto. Ass'n.,* 498 P.2d 112, 116 (Alaska 1972) ("Where the terms of the policy are clear and unambiguous, we will, of course, give effect to the language.").

**20.** *See Florsheim,* 393 N.E.2d at 1231 (Insured "cannot blame the insurer for her failure to read the policy to discover the requirements for bringing suit.")

**21.** *See Laughton v. Chester County Mut. Ins. Co.,* 641 F.Supp. 40, 43 (E.D.Pa.1985) ("Plaintiff retained her present counsel for more than one year before suit was filed; this counsel received defendant's final letter ... denying coverage. Plaintiff's counsel offers no explanation for this delay.").

**22.** I would urge the legislature to overrule the majority's decision by express legislation and approve the application and enforcement of the suit limitation clause for the reasons set forth in my dissent.

**23.** Footnote 1 of the majority opinion suggests that the avoidance of the extra danger of fraud

or mistake associated with stale claims, and resulting prejudice, can be cured simply by the insurance company bringing a declaratory judgment proceeding separate and apart from any suit by the insured under the terms of the insurance policy.

This proposed simplistic solution is naive, unnecessary and certainly not cost effective. When the insurance company denies a claim due to arson, fraud or misrepresentation, the insured now has one year to file suit. If the insured's claim is honest and bona fide, there is absolutely no valid reason why the insured cannot file suit within one year from the date the claim was denied. The majority has failed to even suggest a valid reason for such a delay.

Most cases involving arson fires or fraud claims require the linkage of numerous pieces of circumstantial evidence in order to solve the jigsaw puzzle implicating the insured. Until the insured elects to sue under the terms of the policy, within one year after denial of the claim, the insurance company has no contractual obligation to prematurely institute a lawsuit. Why would it if the insured elected not to sue? Why would unnecessary expense be incurred to attempt to prove a negative when the insured has the contractual duty and obligation to substantiate the legitimacy of the claim and the amount of damages? If the insured elects to sue within one year after denial of the claim, then, in the same lawsuit, the defenses of arson and fraud are raised, and all matters are tried at one time.