857 P.2d 1301

Kristy PRUETT, a single person, Plaintiff–Appellant,

v.

FARMERS INSURANCE COMPANY OF ARIZONA, an Arizona corporation, Defendant–Appellee.

No. 1 CA–CV 91–0070.

Court of Appeals of Arizona, Division 1, Department E.

Feb. 11, 1993.

Reconsideration Denied April 16, 1993.

Petition and Cross-Petition for Review Denied Sept. 21, 1993.*

---

* Zlaket and Martone, JJ., of the Supreme Court, voted to grant the Cross-Petition for review.

Gene G. Gulinson, Ltd. by Gene G. Gulinson and Chris A. Gulinson and Plattner Verderame, P.C. by Richard S. Plattner, Phoenix, for plaintiff-appellant.

Broening, Oberg & Woods, P.C. by James R. Broening and Neal B. Thomas, Phoenix, for defendant-appellee.

## OPINION

CLABORNE, Presiding Judge.

This is a third-party bad faith action involving the "household exclusion" in an insurance policy. The insurer had refused to settle a personal injury claim with the injured party for any more than the statutory minimum, relying on an Arizona Supreme Court case which held that the household exclusion was unenforceable to the extent of the statutory minimum coverage, but enforceable beyond that amount.

The injured party had argued to the insurer that the exclusion could not be enforced at all because of the doctrine of reasonable expectations. There was an assignment of the insured's rights to the injured party. The injured party then sued the insurer for bad faith for failing to settle for the policy limits. The superior court granted summary judgment in favor of the insurer on the sole basis that the insurer's reliance on the supreme court case insulated the insurer from liability. This appeal followed, and we reverse the trial court.

A fairly detailed exposition of the facts should make our reasons for reversal clear.

On April 12, 1986, Kristy Pruett ("appellant") was injured in an automobile accident. She was a passenger in a car owned by her father, Delbert Pruett ("Pruett"), and driven by her boyfriend, Billy Jeffrey ("Jeffrey"). Pruett insured the car through the appellee, Farmers Insurance Company of Arizona ("Farmers"). Jeffrey, as a permissive driver, was an omnibus insured under that policy. Jeffrey was also covered by a policy issued by Auto Owners Insurance Company, but that policy was excess above Farmers' coverage.

On May 16, 1986, a representative of Farmers contacted Jeffrey to investigate the accident. Farmers determined that Jeffrey was 100% at fault. This was the only time Farmers contacted Jeffrey.

Pruett's policy with Farmers provided liability coverage of $50,000 per person and $100,000 per accident. Soon after the accident, Farmers evaluated the appellant's claim to be worth at least $50,000, and set its reserves at $50,000.

The policy contained the following exclusion:

This coverage does not apply to:

. . . . .

11. The liability of any **insured person** for **bodily injury** to you or a **family member**.[1]

The policy defines "family member" as "a person related to [the insured] by blood, marriage or adoption who is a resident of [the insured's] household, including a ward or foster child."

The appellant hired a lawyer, Richard Plattner ("Plattner"), to represent her. On September 15, 1986, Farmers' representative, David Kinder, wrote to Plattner informing him:

A review of the insured's auto policy, and an opinion from our legal office, indicates your client has a liability claim for injuries against the auto policy written for Delbert Pruett by Farmers Insurance Company of Arizona. A review of the Arceneaux decision indicates this case applies only to the coverage for the named insured and spouse, and would not apply to other resident members of the insured's household.

The policy written for Delbert Pruett provides $50,000. [sic] liability coverage to your client.

Farmers had previously, in another file, received an opinion from its lawyer, Ernest Tinsley ("Tinsley"), that the household exclusion was unenforceable up to the minimum limits of the financial responsibility law, and then enforceable from that point. In other words, Tinsley opined that coverage was only $15,000, the amount set by statute. His opinion was based on *Arceneaux v. State Farm Mutual Auto. Ins. Co.*, 113 Ariz. 216, 550 P.2d 87 (1976), and its predecessors.

On December 23, 1986, Plattner wrote to Kinder informing him that the appellant's damages would certainly exceed $50,000 and offered to settle for that amount. The branch claims supervisor wrote to Plattner on January 30, 1987, advising that Farmers would settle for $15,000. He enclosed with this offer a copy of Tinsley's letter which said that the household exclusion was enforceable after the legal minimum of $15,000.

On February 3, 1987, Plattner responded with a letter to the claims supervisor claiming that Farmers was "perilously close to committing bad faith." He asserted that

---

**1.** This and similar exclusions have been referred to as the "household exclusion," the "family member exclusion," and the "family exclusion," etc.

Farmers was estopped to assert a liability limit of $15,000 because it had previously informed him that there was $50,000 available to his client. He also disputed Tinsley's evaluation of the enforceability of the household exclusion:

> [T]he legal opinion by Ernest D. Tinsley fails to refer to the controlling decision of the Arizona Supreme Court in this regard. I am enclosing a copy of the first and fifth pages of *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Company*, 140 Ariz. 383, 682 P.2d 388 (1984).
>
> Please note the language in footnote 6 on the fifth page. You will see that the cases relied upon by Mr. Tinsley have been disavowed by the Arizona Supreme Court on the basis that the earlier cases ignored the fact that the "named insured exclusion" or "family member exclusion" violates the reasonable expectations of the insured and therefore violates the public policy of the state of Arizona.

Plattner reiterated his offer "to accept Farmers' policy limits of $50,000.00 in full payment of Farmers' obligations under the liability portion of its policy." This offer was to remain open until February 18, 1987.

About this time, Tinsley told Farmers that it may have been estopped to assert that its liability limit was only $15,000. Tinsley recommended to Farmers that it evaluate the case up to the policy limits of $50,000. Based on this recommendation, the claims supervisor and the claims manager requested authority to settle for $30,000. The insurer declined.

On June 9, 1987, Tinsley wrote to Plattner to explain his position with regard to *Darner*'s effect on the household exclusion. His opinion was that *Arceneaux* controlled and that Farmers' exposure did not exceed $15,000. On July 23, Plattner wrote to Tinsley to give Farmers "one more opportunity" to settle for $50,000, again expressing his opinion on the enforceability of the household exclusion. On August 3, 1987, Farmers paid the undisputed $15,000.

On August 13, 1987, Plattner made a formal demand against Auto Owners for its policy limits of $25,000 for Jeffrey's exposure in excess of the Farmers' policy. In his letter, Plattner said that he would probably have to litigate with Farmers over the effective limit of its liability, and offered to Jeffrey a covenant not to execute and release of Auto Owners. Plattner sent a copy of this letter to Farmers.

On July 28, 1987, the Arizona Supreme Court released its opinion in *Gordinier v. Aetna Casualty & Surety Co.*, 154 Ariz. 266, 742 P.2d 277 (1987). On September 9, Plattner wrote to Tinsley enclosing a copy of the slip opinion and stating: "You were not convinced that the family member exclusion violates the reasonable expectations of the insured (and is therefore invalid) notwithstanding my citation of the earlier *Darner* and *Zuckerman*[2] cases. I respectfully suggest you reconsider your position in the light of *Gordinier*." He reiterated the offer to settle for $50,000, this offer to remain open for fifteen days.

On September 28, Tinsley wrote to Farmers with regard to Plattner's July 28 letter. He stated:

> In essence, Mr. Plattner is taking the position that if the Arizona Supreme Court were to be presented with the question of whether the family member exclusion violates the reasonable expectations of the insured, it would rule in the affirmative. Mr. Plattner's prognostication may be correct, or may be incorrect; the reasonable expectations decisions which have been disseminated by the court do not yield a clear answer to that question.
>
> Thus, at this point our choices are: (1) agree with Mr. Plattner's prognostication and acquiesce in his request not to apply the family member exclusion, (2) suggest to Mr. Plattner that he file a Declaratory Judgment Action on this issue or (3) inform Mr. Plattner that we are standing by our previous position, and wait for his response.

**2.** *Zuckerman v. Transamerica Ins. Co.*, 133 Ariz. 139, 650 P.2d 441 (1982).

Farmers chose to stand by its position regarding *Arceneaux* and did nothing in response to Tinsley's letter.

In May and June of 1988, Pruett, Jeffrey and Auto Owners entered into negotiations leading to a *Damron*[3] agreement. On June 14, 1988, Auto Owners wrote to Tinsley demanding that Farmers defend Jeffrey in Pruett's action. Tinsley responded that he was researching whether Farmers had a duty to defend beyond its asserted $15,000 liability limit, and requesting that he be informed in the event Jeffrey was served with process. He later informed Auto Owners that Farmers would defend Jeffrey, but stated:

> Farmers still maintains that pursuant to the policy exclusions referenced in previous correspondence it does not have a duty to indemnify Mr. Jeffrey above the $15,000 payment which has already been made on his behalf. Thus, Farmers will defend Mr. Jeffrey, but will not be indemnifying him if a judgment is obtained against him in excess of $15,000.

On December 16, 1988, Pruett and Jeffrey signed the *Damron* agreement and the covenant not to execute.

On November 29, 1988, this court handed down its decision in *State Farm Mutual Auto. Ins. Co. v. Dimmer*, 160 Ariz. 453, 773 P.2d 1012 (App.1988), in which we applied *Darner* to a similar household exclusion and held the exclusion unenforceable. The claims department asked if Farmers wished to change its position in light of *Dimmer*, but received no response. After the supreme court denied review in *Dimmer*, Farmers paid the remaining $35,000 of the policy's stated $50,000 limit on November 29, 1989. However, before the $35,000 payment Jeffrey assigned to Pruett his rights against Farmers, and Pruett had filed this bad faith action against Farmers.

The parties filed cross-motions for summary judgment which the court denied. In response to concerns raised by the judge at oral argument, the parties stipulated:

1. That Defendant rejected four offers to settle the underlying claim ... within the stated policy limits of $50,000.

2. That in rejecting those offers and deciding not to provide coverage for the claim of Kristy Pruett beyond the $15,000 minimum required by the State's financial responsibility laws, Defendant relied solely on the line of cases which culminated in *Arceneaux v. State Farm Mutual Auto. Ins. Co.*, 113 Ariz. 216, 550 P.2d 87 (1976).

3. That Defendant knew damages were in excess of the $50,000 policy limits offer to settle by Kristy Pruett.

4. That Defendant did not attempt to induce the insured to contribute to a settlement.

5. That Defendant did not directly inform its insured, Billy Jeffrey, of the compromise offers.

6. That Defendant did not consider the amount of financial risk to Billy Jeffrey when refusing to settle.

Based on this stipulation, both parties moved the court to reconsider the denial of their respective motions for summary judgment. The court did so and granted summary judgment to Farmers. The court entered formal judgment on November 26, 1990 and Pruett filed a timely notice of appeal. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–2101(B) (Supp.1992).

█ This is a third-party bad faith case. *See Clearwater v. State Farm Mutual Auto. Ins. Co.*, 164 Ariz. 256, 258, 792 P.2d 719, 721 (1990). "In third-party cases, determining whether the insurer has acted in bad faith by refusing to settle a claim brought by a third party requires 'equal consideration of the comparative hazards. ...'" *Id.* at 260, 792 P.2d at 723 (quoting *General Accident Fire & Life Assurance Corp. v. Little*, 103 Ariz. 435, 443, 443 P.2d 690, 698 (1968). This determination is made by considering various factors:

(1) the strength of the injured claimant's case on the issues of liability and damages;

**3.** *See Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969).

(2) attempts by the insurer to induce the insured to contribute to a settlement;

(3) failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured;

(4) the insurer's rejection of advice of its own attorney or agent;

(5) failure of the insurer to inform the insured of a compromise offer;

(6) the amount of financial risk to which each party is exposed in the event of a refusal to settle;

(7) the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and

(8) any other factors tending to establish or negate bad faith on the part of the insurer.

*Clearwater*, 164 Ariz. at 259, 792 P.2d at 722 (citations omitted).

The trial court granted summary judgment on very narrow grounds:

Farmers based their decision to limit coverage solely on the *Arceneaux* decision, 113 Ariz. 216, 550 P.2d 87.

This Court finds that as matter of law the reliance by Farmers on *Arceneaux* insulates it from a bad faith claim.

Therefore, we are faced with the narrow question of whether *Arceneaux* insulates the insurer from bad faith liability. The argument made by the appellant is that the policy is an insurance contract and that one of the implied conditions of such a contract is the doctrine of reasonable expectations and, based on that doctrine, the household exclusion is unenforceable. The insurer responds by saying that *Arceneaux* is still valid and that any unenforceability of the household exclusion is limited to the minimum amount established by statute.[4] To resolve this argument we must examine the cases properly bearing on this issue.

The basic issue in *Arceneaux v. State Farm Mutual Auto. Ins. Co.*, 113 Ariz. 216, 550 P.2d 87 (1976), was a narrow one. State Farm sought to limit *Stevens v. State Farm Mut. Auto. Ins. Co.*, 21 Ariz.App. 392, 519 P.2d 1157 (1974), which had held the household exclusion unenforceable because it violated the legislative policy of providing at least minimal coverage, as expressed in the Safety Responsibility Act, A.R.S. sections 28–1101, *et seq.* State Farm's argument was that "neither the insurance policy nor the statute requires coverage in excess of the basic $15,000 limit." 113 Ariz. at 217, 550 P.2d at 88. The supreme court agreed:

In *Rocky Mountain Fire & Casualty Co. v. Allstate Ins. Co.*, 107 Ariz. 227, 485 P.2d 552 (1971), the court held that if the policy of insurance specifically so provides, less insurance coverage may be provided for an omnibus insured than for the named insured as long as the Safety Responsibility Act is complied with. It seems logical that the contract of insurance here need provide for members of the household nothing more than the Act requires, and thereafter the exclusionary clause is viable.

113 Ariz. at 217–18, 550 P.2d at 88–89.

In 1984, our supreme court decided that the proper way to read an insurance policy was to read it in the light of common experience and common sense. *See Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388 (1984). The court criticized previous decisions which deal with exclusions similar to the one here by saying:

*Rodemich [v. State Farm Mutual Auto. Ins. Co.*, 130 Ariz. 538, 637 P.2d 748 (App.1981) ] ... is typical of the traditional reasoning applied to interpretation of insurance contracts. A recent example of this can be found in *State Farm Insurance Company v. Gibbs*, 139 Ariz. 274, 678 P.2d 459 (App.1984 [sic, 1983] ). In *Gibbs* the court of appeals followed previous Arizona authority and concluded from the four corners of the agreement that the parties had unambiguously expressed an intent that the poli-

---

4. Farmers argues that its reliance on *Arceneaux* falls under factor number eight as another factor "tending to ... negate bad faith...." It asserts that *Arceneaux* is so powerful that this factor prevails over the others. The trial court appears to have agreed.

cy should contain an exclusion (known as the "named insured exclusion") deleting from liability coverage all claims which the named insured or his relatives might assert against any permissive driver covered under the omnibus clause of the policy. We cannot pretend that Mr. Gibbs, presumably an average person, had any idea that the policy contained such a clause, or, had he understood its ramifications, would have intended that his premium dollars should be used to protect the entire world except the members of the Gibbs family. Gibbs' intention would probably have been exactly contrary. To support this fiction regarding the insured's intention the court creates a second—that Gibbs bargained, for a lower premium, to get a policy with such an exclusion. The use of the second fiction requires yet a third—that for a higher premium, one could induce State Farm to change its standard auto policy and delete the named insured exclusion. Such a negotiation might be possible for IBM, bargaining to insure its fleet. It defies belief to attribute such power to any ordinary customer. *Gibbs* relies on *New York Underwriters Insurance Company v. Superior Court,* 104 Ariz. 544, 456 P.2d 914 (1969). In *New York Underwriters* this court applied the same three assumptions pertaining to the insured's intent. In neither case was there evidence or fact to support the analysis. The assumptions made are contrary to common knowledge of the manner in which the great bulk of insurance business is transacted. We believe the time has come to remove insurance law from the land of make-believe.

140 Ariz. at 388 n. 6, 682 P.2d at 393 n. 6.

*Darner,* when speaking of insurance contract construction, adopted section 211 of the Restatement (Second) of Contracts (1979), which in turn "codified" case law which had been in existence for some time. Part of that section says:

> (3) Where the [insurer] has reason to believe that the [insured] manifesting assent [to the contract] would not do so if he knew that the writing contained a

particular term, the term is not part of the agreement.

Then, in 1987, the court decided *Gordinier v. Aetna Casualty & Surety Co.,* 154 Ariz. 266, 742 P.2d 277 (1987). The supreme court applied the *Darner* rule to provisions in a policy which defined who could benefit from uninsured motorist coverage. The case was decided on summary judgment grounds. The supreme court held that summary judgment was not appropriate because factual issues remained concerning whether the injured party might be able to prove that the excluding provisions at issue (1) were unintelligible to the average ordinary consumer; (2) the policy emasculated what appeared to be coverage; and (3) "undercut the purpose of the transaction or even the dickered deal between the parties." 154 Ariz. at 273–74, 742 P.2d at 284–85.

Finally, in 1988, we decided *State Farm Mut. Auto. Ins. Co. v. Dimmer,* 160 Ariz. 453, 773 P.2d 1012 (App.1988). In that case there were two issues which dealt with the household exclusion in an insurance policy. The first argued that the exclusion was completely void as against public policy. We held that the issue had been decided by *Arceneaux* and we were bound to follow that supreme court precedent. The second issue was whether the *Darner* doctrine of reasonable expectations was applicable. We held that it was applicable and held the exclusion unenforceable.

■ Farmers takes the position that *Dimmer* was wrongly decided. It claims that this court merely paid lip service to *Arceneaux* and then effectively overruled it. Farmers fails to recognize the distinction between the two cases. *Arceneaux* was decided on public-policy grounds: because of legislative mandate, certain minimal coverage must be provided. This is true for all automobile policies in the state. *Dimmer* invalidated the exclusion on the basis of *contract interpretation,* not on public policy grounds.

One must remember that there were different arguments in *Arceneaux* and in *Darner, Gordinier,* and *Dimmer. Arceneaux* is still good law. The problem is that

it does not control this case. In this case the appellant questioned the validity of the household exclusion on the *Darner* theory of reasonable expectations in the insurance contract. *Arceneaux* simply dealt with public policy as set forth in the financial responsibility statutes. An insurer cannot insulate itself from liability, no matter how strong the precedent, based on a case that simply does not address the issue raised. The trial court erred in granting summary judgment.

■ However, this holding alone does not solve the problem. The appellant here argues that we should instruct the trial court to enter judgment in her favor. Our conclusion that *Arceneaux* cannot insulate Farmers from liability does not mean that there is bad faith as a matter of Law. The *Clearwater* factors must be considered since at least two of them are simply not resolved.

First, this appeal does not establish that, under the doctrine of reasonable expectations, the family exclusion in this policy is unenforceable. Reasonable expectations requires an inquiry into the facts of the particular case. *See Darner,* 140 Ariz. at 394, 682 P.2d at 399; *Dimmer,* 160 Ariz. at 460, 773 P.2d at 1019. *Dimmer* did not hold that the household exclusions are to be deleted from every automobile policy in this state. The effective limits of the policy here remain to be established.

Second, as Farmers indicates, its second motion for summary judgment was pending when the court granted summary judgment on the *Arceneaux* issue. One of the motion's issues was whether Farmers was given adequate notice of the Damron agreement and the negotiations leading thereto. When an insurer breaches a duty to its insured, the insured's actions must be reasonable. *See, e.g., Arizona Property & Casualty Ins. Guar. Fund v. Helme,* 153 Ariz. 129, 138, 735 P.2d 451, 460 (1987). There has been no determination of the reasonableness of Jeffrey's conduct with respect to the *Damron* negotiations and agreement.

The judgment is reversed and the case is remanded for further proceedings.

GARBARINO and ROBERTS, JJ., concur.

NOTE: Judge DAVID L. ROBERTS, Maricopa County Superior Court, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. art. VI, § 3.